State of Missouri at the relation of Shell Petroleum Corporation, Relator, v. Jefferson D. Hostetter, William Dee Becker and Edward J. McCullen, Judges of the St. Louis Court of Appeals. —156 S. W. (2d) 673.

Court en Banc, November 26, 1941.

*Moser, Marsalek & Dearing* for relator.

*Everett Hullverson* and *Orville W. Richardson* for respondents.

844

LEEDY, J.—Certiorari to the judges of the St. Louis Court of Appeals wherein relator seeks to have quashed, for alleged conflict, the opinion of said court in the case of Cuddy v. Shell Petroleum Corp. et al., 127 S. W. (2d) 24. That was an action for personal injuries alleged to have been sustained by plaintiff as the result of

slipping and falling as she was passing over a driveway which forms a part of the public sidewalk adjoining an oil and gasoline filling station in the City of St. Louis owned, operated and maintained by Shell Petroleum Co., "by and through its agent, employee and lessee," one B. F. O'Reilly, who also was joined as a defendant. The verdict and judgment in the trial court was in favor of plaintiff and against Shell Petroleum Corp., in the sum of $3000, and in favor of the codefendant, O'Reilly. The corporate defendant (hereinafter referred to as "Shell"), relator here, appealed to the St. Louis Court of Appeals, which court reversed the judgment and remanded the cause for error in the instructions. Relator does not complain of that holding, but contends that respondents failed to follow prior controlling decisions of this court in (1) holding that plaintiff made a submissible case, and (2) in remanding the case for a new trial against relator, where it appears on the face of the record that the jury exonerated the lessee, O'Reilly. The cause came to the court en banc on transfer from Division II where an opinion was prepared and filed (but not adopted), which quashed respondents' opinion in part. A different result has been reached on the present submission, but recourse will be made to the opinion prepared in division by adoption of portions of the same.

The facts pertinent to the limited inquiry with which we are concerned, and as found in the opinion under scrutiny, may be summarized as follows: The filling station is located at the Southwest corner of Kingshighway and Wells Avenue; the former runs north and south, and the latter east and west; the property was acquired by Shell in September, 1929; the sidewalk, which was six feet in width (exclusive of the parkway between the walk and curb) was constructed in 1922; the part whereon plaintiff fell and was injured runs along the Wells Avenue side and forms a sloping driveway into the filling station, the vertical pitch or cross-grade thereof being seven and six-tenths inches in the width of the sidewalk, or six feet horizontal distance. (Plaintiff pleaded an ordinance of the city providing that no sidewalk shall be constructed with a cross-grade "greater than one-half vertical rise to one foot horizontal distance.") The driveway existed at the time in question just as it was when constructed in 1922, no changes having been made therein.

Plaintiff was injured on or about March 13, 1937, as she was walking over the driveway portion of the sidewalk covered at the time with snow beneath which ice had packed. She testified she stayed to the center of the driveway "where it looked level," and that while crossing her foot "gave away" and she slipped down "because it was very slanty;" that the grade of the driveway was "very steep, because you have a time walking over it when it is dry." Defendant O'Reilly leased the property in October, 1935, under a lease from Shell for a term of one year, and from year to

year thereafter unless sooner terminated, but Shell did most of the repairing and maintenance of the place. Their truck called three times a week for that purpose. An attendant at the station, called by defendants, testified he had occasion to clean the public sidewalk three times on the day ▆▆▆ in question; that he observed the ice which had formed on the sidewalk at that point. On cross-examination, referring to the driveway in question, he testified:

"Q. You say it is steep, don't you? A. Yes, sir.

"Q. And you recognize the fact, don't you, that a steep driveway with ice on it is dangerous to people walking on it? A. Yes, sir.

"Q. Yes. You know that, don't you? A. Yes.

"Q. You had plenty of opportunity, then, to find out whether there was any ice on the driveway, didn't you? A. Yes, sir.

"Q. Was there ice on the driveway? A. Not that I know of.

"Q. You don't know whether there was or not. Is that right? A. That's right. Water from snow or ice or anything else would naturally run down the driveway, and, if it was cold enough, it would freeze.

"Q. And that was during all the time you worked there, wasn't it? A. Yes, sir; that condition existed. I didn't put any snow which I had shoveled from the sidewalk on the driveway. I pushed it off to each side of it there.

. . . . . . .

"Q. Now, it would not have been difficult to get the ice off, would it? A. No, sir."

▆▆ On the foregoing facts the Court of Appeals held that "although Shell did not originally construct the sloping driveway in the sidewalk, it did, for its own purposes, maintain the driveway in the sloping condition it was in when plaintiff fell thereon . . ." and that "reasonable minds would differ on whether the driveway was maintained in a reasonably safe condition for the use of pedestrians using the public sidewalk through which the driveway was maintained, and the question was therefore one for the jury to determine." In so holding it is charged, as the first assignment, that the opinion announces a rule of law which is in conflict with the following cases: Callaway v. Newman Mercantile Co., 321 Mo. 766, 12 S. W. (2d) 491; Baustian v. Young and The City of St. Louis, 152 Mo. 317, 53 S. W. 921; Russell v. Sincoe Realty Co., 293 Mo. 428, 240 S. W. 147. The relator's contention is that the abutting property owner owes no duty to the public to repair and maintain in a safe condition the sidewalk abutting his property; his obligation is to the city, and the obligation to the public rests on the city, and not on the abutting property owner. Such is the general rule of the common law, as the foregoing cases hold. But there is another doctrine recognized in the same cases, and applied by the respondents, to the effect that where an abutting owner or occupier makes extraordinary use

of the sidewalk for his own convenience (as for example, the construction or maintenance of a private cellarway therein), he does owe a duty to the public to exercise reasonable care in seeing that it is maintained in a reasonably safe condition for use by the public as a part of the sidewalk. [See annotation to the Newman Mercantile case, supra, in 62 A. L. R., p. 1067.] Perrigo v. St. Louis & Blanke, 185 Mo. 274, 84 S. W. 30, is such a case, where this court affirmed a judgment against both defendants for personal injuries occasioned by plaintiff's foot striking the stone base of a cellar stairway to the abutting property owner's premises which base projected above the surface of the sidewalk three or four inches. It was there said: ''The defendant Blanke in this case was allowed the extraordinary use of the sidewalk for her private convenience in that she was allowed to construct and maintain therein a private cellar-way to her premises. If in this use she so constructed *or maintained* a cellar door and a base so high above the pavement as to render the sidewalk unsafe for pedestrians thereon, she failed to discharge the duty imposed on her by law, and in the absence of contributory negligence, she ought to respond in damages for injuries caused by such unsafe condition thus created by her.'' See, also, Merrill v. City of St. Louis et al., 83 Mo. 244; Benjamin v. Metropolitan St. Ry. Co., 133 Mo. 274, 34 S. W. 590; Wiggin v. St. Louis, 135 Mo. 558, 37 S. W. 528; Reedy v. St. Louis Brewing Assn., and City of St. Louis, 161 Mo. 523, 61 S. W. 859, 53 L. R. A. 805; Stith v. J. J. Newberry Co. et al., 336 Mo. 467, 79 S. W. (2d) 447; Luettecke v. City of St. Louis et al., 346 Mo. 168, 140 S. W. (2d) 45; Morgan v. Kroger Grocery & Baking Co., 348 Mo. 542, 154 S. W. (2d) 44.

In none of the cases relied on by relator was there involved anything in the nature of an artificial condition maintained by, or for the convenience of the abutting owner, except Callaway v. Newman Mercantile Co., supra. In that case a steel frame with glass prisms had been installed in the sidewalk to give light to the basement of a store which extended underneath the walk. This was done in accordance with specifications prescribed by the city. Plaintiff therein was injured when she caught her heel in a hole, caused by one of the prisms having been previously broken out. There was no evidence that there was anything inherently dangerous in the original construction of the sidewalk, or in its plan. The court recognized that the particular construction there involved afforded some private and personal convenience to the abutting property owner, but it was not considered as differing from that frequently used in all cities, especially in a business district. The following excerpts sufficiently indicate the reasoning of that case: ''When the sidewalk was originally constructed and completed, it afforded a smooth, unbroken, level surface, entirely free from anything in the nature of an obstruction or opening, whereby a pedestrian might encounter any

danger from tripping or falling. The mere fact that some of the glass prisms may have broken and fallen from the steel framework of the sidewalk . . . does not . . . differentiate the instant case from one wherein planks or stringers may have been broken and loosened, or entirely removed, from a wooden sidewalk . . . ; nor . . . does the system or plan of construction of the sidewalk herein call for the application of another and different rule or principle of law than that which is applied . . . in the case of the disrepair of a wooden, brick or flagstone sidewalk. . . . Regardless of the incidental and secondary use and convenience to the defendant herein, it is clearly evident that the sidewalk structure was intended and primarily constructed as and for a public sidewalk, and for no other purpose foreign to such use.''

The ramplike incline of 7.6 inches in six feet in the driveway portion of the sidewalk in question was maintained for the benefit and convenience of the owner or occupant of the abutting premises, affording extraordinary use of the sidewalk for purposes other than as a sidewalk, and this is sufficient to differentiate the case from those relied on by relator, including the Newman Mercantile Co. case. The decision in the latter case was by a divided court (four to three). We will not re-examine the merits of the question there presented, but it may be observed that the case does seem to be contrary to the decided weight of authority [See cases cited in Mo. Law Review, Vol. 6, p. 124. Those involving glass prism inserts are Niehaus v. Caryfield, Inc., 269 N. Y. Supp. 335; Monsch v. Pellissier, 204 Pac. 224; Sanders v. First Nat'l Bank, 80 Pac. (2d) 207] and we think, in any event, its doctrine should not be expanded. The claim of conflict must be disallowed.

Relator's next contention is that, since the jury's exoneration of defendant O'Reilly has become final, the judgment against relator may not be sustained, and in remanding the cause for new trial against relator respondents' opinion conflicts with our rulings in Stephens v. D. M. Oberman Mfg. Co., 334 Mo. 1078, 1084, 70 S. W. (2d) 903, and Wright v. Hannan & Everitt, Inc., 336 Mo. 732, 81 S. W. (2d) 303. Respondents say there is no question of conflict for consideration on the issue as they did not rule said issue. Our ultimate concern in this proceeding is with a conflict of rulings and we need not consider this contention of respondents if we have not ruled the issue.

''The rule adopted by a majority of the courts which have considered the question, which is a logical deduction from the doctrine of respondeat superior, is thus stated: 'Where the relations between two parties are analogous to that of principal and agent, or master and servant, the rule is that a judgment in favor of either, in an action brought by a third party, rendered upon a ground equally applicable to both, should be accepted as conclusive against the plaintiff's right

of action against the other.' '' Annotations, 78 A. L. R. 365; 54 L. R. A. 649. See authorities cited in Stoutimore v. Atchison, T. & S. F. Ry. Co., 338 Mo. 463, 468 [1], 92 S. W. (2d) 658, 659 [1]. The relation between relator and its codefendant O'Reilly was that of lessor and lessee. In the Stephens and Wright cases the plaintiffs invoked the doctrine of respondeat superior to hold the defendant masters liable, and relator directs our attention to no case and our search has revealed none so holding where the relation between the codefendants was that of lessor and lessee. Under the doctrine of respondeat superior the master's liability is secondary and derivative, the servant's primary, and absent any delict of the master other than through the servant, the exoneration of the servant removes the foundation upon which to impute negligence to the master. A fundamental distinction between the relation of master and servant and the relation of lessor and lessee of real estate—landlord and tenant—is that, under the relation of landlord and tenant, the tenant possesses an estate in the demised premises; whereas, under the relation of master and servant, a servant acting within the scope of his employment in and about the master's premises ordinarily has no estate by virtue of said relation in the premises and his acts are the acts of his master. Other reasons advanced by respondents for reaching the same result may be well taken but what we have said sufficiently disposes of any issue of a conflict in rulings.

 Turning now to the assignment of conflict urged by counsel for respondents who represented the plaintiff below, we adopt, with minor alterations, and quote (omitting customary marks) that portion of the opinion prepared in division, as follows:

Plaintiff says respondents' ruling that relator's plea ('' 'whatever injuries, if any, were sustained by plaintiff on the occasion in question, by and on account of the matters and things in said petition contained and set forth, were caused by the negligence and carelessness of plaintiff directly contributing thereto.' '' [127 S. W. (2d) 1. c. 26]), although general, was a sufficient plea, absent attack, of contributory negligence conflicts with controlling decisions of this court. Respondents based said ruling upon that portion of State ex rel. Hopkins v. Daues (Banc, 1928), 319 Mo. 733, 743, 6 S. W. (2d) 893, 898, reading: ''These cases announce the correct rule that a general charge of negligence in a petition or answer is sufficient unless such pleading is properly assailed before verdict for want of definiteness.'' We understand the Hopkins case does not necessarily base its ruling on the fact that the petition was aided by a verdict but discussed the issue from the viewpoint that the petition involved charged general negligence, although there had been a verdict for the plaintiff and the petition may have alleged more than mere general negligence. Plaintiff also says the reference to the sufficiency of a general charge of negligence in an answer was dictum. But, as pointed out in the

Hopkins case (319 Mo. 1. c. 742, 6 S. W. (2d) 1. c. 897[7]), the latest decision of a division of the Supreme Court in point of time is the decision which the courts of appeals are bound to follow in the absence of an authoritative expression from the court en banc. Kincaid v. Birt (Mo. Div. II, 1930), 29 S. W. (2d) 97, 98 [2], in upholding the legal propriety of an instruction on contributory negligence relied upon the Hopkins case and cases therein cited and said: "In defendant's answer he charges, in general terms, that the plaintiff was injured by his own negligence. Plaintiff, to this general charge, interposed no objection and filed no motion to make the answer more definite and certain, but contented himself with a reply which consisted of a general denial. A general allegation of negligence under our procedure in either a petition or an answer is sufficient, unless assailed before verdict." This sufficiently disposes of plaintiff's contention of conflict; but, briefly as we may, of plaintiff's cases.

Harrison v. Missouri Pac. Ry. Co. (Banc, 1881), 74 Mo. 364, 369, merely upholds a trial court's action in striking out a general plea of contributory negligence in an answer upon plaintiff's motion. The court logically reasoned that if it is necessary for a petition to state the particular facts constituting defendant's negligence it is likewise necessary for an answer to state the particular facts constituting plaintiff's negligence; and quoted an observation (but not the whole thereof) from Waldhier v. Hannibal & St. J. Rd. Co. (Banc, 1880), 71 Mo. 514, 516, with respect to a plaintiff's petition. The whole of the Waldhier decision, as we read it, ruled that where plaintiff pleads specific negligence he may recover, if at all, only on the specific negligence pleaded.

Benjamin v. Metropolitan St. Ry. Co. (Banc, 1912), 245 Mo. 598, 612 (d), 151 S. W. 91, 95 (d), condemned an instruction directing a verdict for defendant if plaintiff be found guilty of "any" contributory negligence as too general. (Instructions should be within the purview of both the pleadings and the evidence. Rishel v. Kansas City Pub. Co. (Mo.), 129 S. W. (2d) 851, 855 [5], citing cases.) In the Benjamin case the court made two observations arguendo: "It has been held that the pleader may charge general negligence or special negligence, and the former will be sufficient in the absence of a motion to make more definite and certain;" and, on the following page, that a general plea of contributory negligence "was not sufficient." From the first remark in the Benjamin case and the citation of the Harrison case therein, the latter remark in the Benjamin case was directed to the vulnerability of a general plea of contributory negligence upon attack by motion; otherwise the observations are inconsistent.

The Harrison and Benjamin cases do not rule a general charge of contributory negligence, absent attack, insufficient.

Harrington v. Dunham (Div. II, 1918), 273 Mo. 414, 428, 202 S.

W. 1066, 1069 [5]; Heriford v. Kansas City Rys. Co. (Div. II, 1920), 220 S. W. 899, 902 [3]; Keppler v. Wells (Div. II, 1922), 238 S. W. 425, 428 [2]; and Hanke v. St. Louis (Div. I, 1925), 272 S. W. 933, 938 [8], are to the effect, without developing the details, that a general plea of contributory negligence in an answer will not support a defendant's instruction submitting a factual issue involving plaintiff's contributory negligence.

Kramer v. Kansas City P. & L. Co. (Div. II, 1925), 311 Mo. 369, 389, 279 S. W. 43, 49 (I), holds a general charge of negligence in a petition good absent attack. (Note: The opinion of WHITE, J., is the majority opinion. See the Hopkins case, 319 Mo. 1. c. 742, 6 S. W. (2d) 1. c. 897.) Plaintiff does not question the Kramer case. It was considered the controlling opinion in the Hopkins case. If the word "answer" in the quotation, supra, from the Hopkins case be dictum, we think the word was not inadvertently used. The opinion, by BLAIR, J., was concurred in by ATWOOD, GANTT, RAGLAND, WHITE and WALKER, JJ., GRAVES, C. J., being absent. Thereafter, BLAIR, P. J., and WHITE, J., concurred in Judge WALKER's opinion in Kincaid v. Birt, supra. It appears that certain of the judges of this court had changed their view of the law subsequent to the earlier opinions.

The rulings in the divisional opinions of the Harrington, Heriford, Keppler and Hanke cases, supra, have their foundation in the second observation arguendo, quoted supra, from the Benjamin case. We have pointed out that correctly understood the Benjamin case did not rule a general plea of contributory negligence, absent attack, insufficient. So far as material here Sec. 916, R. S. 1939 [Sec. 764, Mo. Stat. Ann., p. 983], provides that a plaintiff's petition shall contain "a plain and concise statement of the facts constituting a cause of action" and Sec. 928, R. S. 1939 (Sec. 776, Mo. Stat. Ann., p. 1015), provides that a defendant's answer shall contain "a statement of any new matter constituting a defense . . . in ordinary and concise language." A plaintiff's petition and a defendant's answer for the purposes of charging negligence are placed upon the same footing; and justice requires that courts not make fish of one and flesh of the other litigant in ruling on the sufficiency of charges of negligence in a petition and in an answer. (See the reasoning in the Harrison case, supra.) This accords with the holding in the Hopkins and Kincaid cases, supra. The divisional opinions hereinbefore mentioned cannot be regarded as authoritative insofar as they conflict with the later decision of the court en banc in the Hopkins case and the Kincaid case (Div. II), which follows the Hopkins case.

Our writ having been improvidently issued should be quashed. It is so ordered. All concur.