George M. WILLIAMS (Plaintiff),
Respondent,

v.

Ronald KAESTNER (Defendant), Appellant.

No. 30315.

St. Louis Court of Appeals.

Missouri.

Feb. 16, 1960.

Evans & Dixon, John P. Montrey, El-
mer V. A. Bayer, St. Louis, for appellant.

Cleo V. Barnhart, Barnhart & Sommers, St. Louis, for respondent.

BRADY, Commissioner.

The collision in evidence in this cause occurred February 14, 1957, between a taxicab owned by respondent and driven by one Warren Daum, and an automobile driven by the appellant. The evidence was that this collision occurred on U. S. Highway 67, Lemay Ferry Road, which at that place runs generally north and south in St. Louis County. Daum had received a call to go to "Charlie's Bunk House" to pick up a passenger. He drove to that place, located on the west side of the highway, and desiring to head north and being headed south, he entered upon the highway, turning eastwardly and northwardly, making a U turn to the left. The appellant was proceeding northwardly on Lemay Ferry Road and collided with the taxi when it had made the left turn. The evidence on behalf of respondent as to appellant's speed was given by the driver of a car proceeding in the same direction as appellant and whom appellant passed about one-fourth mile back from the scene of the collision. Another witness was riding with him. They both saw the accident. The driver placed appellant's speed at about 80–85 mph when appellant passed him, and his passenger stated that appellant passed them about 200 or 300 feet from where the accident happened, and was then going at a rate of about 80 mph. On cross-examination the passenger said his estimate could vary as much as 5 mph and the driver said he couldn't recall whether or not he had placed the appellant's speed at 50 mph in a statement he gave about a month after the accident. The appellant also passed another car prior to the collision, and a passenger in that car estimated appellant's speed at over 70 mph but not over 90 mph at a point about 400 feet from the place the collision occurred. The driver of the car estimated appellant's speed at between 70 and 80 mph when appellant passed him,

at a time when he was about one-fourth to one-half mile from the scene. Respondent's evidence also was that after picking up his passenger, Daum drove up toward the highway until he reached a point about 2 feet west of the west curb, and then stopped and looked left, or northwardly, on the highway for approaching traffic. He let two southbound cars go by, and then, seeing no more, looked south for northbound traffic. Daum could see about one mile to the south, as the highway at that point is flat and level. He saw the headlights of a northbound car about one-fourth mile away (when he later measured, it was about three-tenths of a mile.) He then entered the highway going eastwardly at first and straightening out toward the northbound lane into the northbound lane closest to the center line. No part of his automobile ever got into the northbound lane next to the shoulder of the highway until after the collision. When he saw the headlights of the car to the south of him, he could tell the car was moving, but never formed any opinion as to how fast it was moving. He started from zero and had accelerated to 30 mph when the impact occurred from the rear of his cab. Daum last saw the lights coming from the south when he had made his swing toward the north, and they had then come one-half of the distance between his cab and where he first saw them. He had gone about 200 feet after his entrance into the northbound lane before the impact took place.

The appellant's evidence tended to show that appellant was proceeding northwardly at a speed in the low 70's or between 70–75 mph. He first saw respondent's taxi when it was at the right "very edge" of the highway, and just starting to come onto the highway about 300 feet from him. He was then in the outside northbound lane. The taxi entered the highway when appellant's car was about 150–300 ft. away. The taxi angled into both northbound lanes. Appellant applied his brakes as soon as he saw respondent's taxi and swerved from

the outer lane to the inner northbound lane to pass Daum on the left. Appellant sounded his horn, but the collision followed.

On July 31, 1957, two actions were filed in the circuit court of the City of St. Louis against the appellant, one by Daum for personal injuries, and one by respondent for property damage in the amount of $2,000. The Daum suit was tried in January, 1958, and resulted in a verdict for Daum, and while the amount of the judgment does not appear in the record, it was agreed by counsel at oral argument that the judgment was for $10,000. This judgment was fully satisfied. The record discloses that Daum's case was submitted to the jury under three separate verdict directing instructions. One was based upon primary negligence for excessive speed; another was based upon primary negligence for failure to keep a vigilant watch and lookout; and the third was based upon humanitarian negligence in failing to slacken speed or in failure to slacken speed and swerve.

On May 1, 1958, the appellant filed his counterclaim in this action for $7,500, for personal injuries. On the 8th day of May, the respondent filed his first amended petition alleging property damages in the amount of $3,005 (amended during trial to $2,905) and more fully setting forth how such a sum was arrived at. On May 23rd, the appellant filed his answer to the amended petition, and on October 8, 1958, respondent filed his amended reply to the appellant's counterclaim in which respondent states:

"For further reply and defense plaintiff states that the cause of action alleged by the defendant in his counterclaim arose out of the transactions and occurrence which were the subject of an action instituted against the defendant by Warren Daum in the St. Louis Circuit Court in the City of St. Louis being cause number 2765–E; that said Warren Daum was the agent of plaintiff for whose actions defend-

ant seeks to hold the plaintiff secondary liable under the respondeat superior doctrine; that the defendant Ronald Kaestner should have asserted his cause of action, which is the subject of his counterclaim herein, in a counterclaim in the previous law suit brought by Warren Daum pursuant to the provisions of Section 509.420 V.A.M.S., 1949, but failed to do so; that the aforesaid St. Louis Circuit Court action, number 2765–E, wherein Warren Daum was plaintiff and Ronald Kaestner was defendant was tried to a conclusion in Division Number 7 of the St. Louis Circuit Court and resulted in a verdict in favor of the plaintiff Warren Daum and against the defendant Ronald Kaestner upon which verdict judgment was entered which is final; that the defendant's cause of action against the person primarily responsible therefor was therefore precluded as a matter of law and therefore the defendant cannot assert the same cause of action by way of a counterclaim against the plaintiff herein who could only be secondary liable therefor."

When the case came on for trial, before the jury was empanelled and in the trial judge's chambers, the counsel for appellant admitted all the facts pleaded in paragraph 5 of the amended reply except that appellant should have asserted his counterclaim in the Daum action and that the failure to do so, and the judgment in the Daum action, precluded the assertion of that counterclaim in this action. Counsel for respondent moved for dismissal of the counterclaim and the trial court sustained the motion and ordered dismissal. Trial was held on respondent's petition, with the result that the jury unanimously found in favor of appellant. The submission in the instant case was under the humanitarian doctrine by Instruction No. 1 on a disjunctive submission of failure to slacken speed or failure to slacken speed and swerve.

Each of the parties moved for new trial. The respondent's motion was based upon three grounds: that the verdict was against the weight of the evidence; that it was error to fail to sustain respondent's challenges for cause as to two jurors who disclosed on voir dire that they were policyholders with the appellant's liability insuror, and because Instruction No. 3 was erroneous. The appellant's motion for new trial asked for a new trial on the counterclaim only and asserted the dismissal thereof by the court, on respondent's oral motion, was erroneous. The trial court overruled appellant's motion, and sustained respondent's motion for new trial on the basis of error in failing to sustain the respondent's challenge for cause. Appellant perfected his appeal from the court's order granting respondent a new trial on his petition and denying appellant a new trial on his counterclaim. The appellant's position is that the verdict in his favor on respondent's petition should be reinstated, and he should be allowed to try his counterclaim. Respondent contends that the dismissal of the counterclaim should be affirmed and he be allowed the new trial on his petition granted him by the trial court.

■ This court has jurisdiction, since the counterclaim and the petition are in their nature mutually repugnant and verdicts for each could not be allowed to stand. The amount in dispute thus becomes the largest of the two claims, the $7,500 prayed for in the counterclaim, and that is within the jurisdictional limits of this court. Hamilton Fire Ins. Co. v. Cervantes, Mo.App., 278 S.W.2d 20; Smith v. Rodick, Mo.App., 286 S.W.2d 73.

■ Between the date of the trial court's ruling on the motion for new trial and the hearing on this appeal, the Supreme Court, in Kendall v. Prudential Ins. Co. of America, Mo., 327 S.W. 2d 174, reversed the decision of the Kansas City Court of Appeals upon which the trial court relied, (see Kendall v. Prudential Ins. Co. of America, Mo.App., 319 S.W.2d 1) and has set at rest the matter of whether or not the two veniremen could be successfully challenged for cause because they were policyholders with the appellant's liability carrier. The trial court granted the respondent's motion for new trial specifically on that ground, and under the authority of Kendall v. Prudential Ins. Co. of America, Mo., supra, the fact that the veniremen were policyholders in the company insuring appellant's automobile did not cause them to be incompetent to serve as jurors, so that the trial court's order granting respondent a new trial cannot be sustained on the ground assigned by that court for its ruling. The respondent contends, however, that error in the giving of Instruction No. 3 entitled him to have a new trial. When the trial court sustained respondent's motion for new trial for a specific reason, it impliedly overruled the other reasons stated in the motion for new trial. Porter v. Chicago, B. & Q. R. Co., 325 Mo. 381, 28 S.W.2d 1035. On appellant's appeal from the order of the trial court granting respondent a new trial, the respondent is not bound by the specific ground mentioned by the trial court but may urge in support of the trial court's ruling any other points properly preserved by assignments in the motion for new trial. White v. St. Louis Public Service Co., 364 Mo. 111, 259 S.W.2d 795. He is entitled to have the other assignments of error in his motion reviewed, and the trial court's order granting the new trial affirmed, if it can be sustained on such other assignments or any of them. Vendt v. Duenke, Mo.App., 210 S.W.2d 692; Elmore v. Illinois Terminal R. Co., Mo.App., 301 S.W.2d 44.

■ On brief and in oral argument, respondent abandoned the first assignment of error contained in his motion for new trial that the verdict on respondent's petition in favor of appellant was against the weight of the evidence, recognizing the rule that such an assignment of error presents noth-

ing for appellate review, Connor v. Temm, Mo.App., 270 S.W.2d 541; Frye v. Baskin, 241 Mo.App. 319, 231 S.W.2d 630. If the trial court's order is to be affirmed as to granting respondent a new trial on his petition, it must be upon the basis that the giving of Instruction No. 3 was prejudicially erroneous. That instruction reads as follows:

### "Instruction No. 3

"The Court instructs the jury that by the term 'imminent peril' as used in these instructions the Court means certain and immediate danger, not just a mere possibility of a collision occurring.

"If you find and believe from the evidence that as soon as it became or should have become apparent to defendant, under the circumstances shown in evidence, that the taxi cab was in a position of imminent peril, it was then too late for defendant to slacken the speed of his automobile, or slacken the speed and swerve the automobile, and thereby have avoided a collision, then the plaintiff cannot recover and your verdict should be in favor of the defendant."

Instruction No. 3 was given and is defended by appellant on the theory that it is a converse of Instruction No. 1. That instruction was respondent's verdict directing disjunctive humanitarian submission and reads:

### "Instruction No. 1

"The Court instructs the jury that if you find from the evidence that on the occasion in question the plaintiff, George Williams, owned the taxicab mentioned in evidence and that it was equipped with a two-way radio and taxicab meter and that prior to the collision mentioned in evidence that plaintiff's taxicab became and was in a position of imminent peril of being struck and collided with by the auto-

mobile operated by the defendant and if you find that the defendant saw or, *in the exercise of the highest degree of care,* could have seen said taxicab in such position, in time thereafter, for the defendant, with the means and appliances at hand and with reasonable safety to himself and all others thereat, to have, *by the exercise of the highest degree of care,* avoided said collision by having *sufficiently slackened the speed* of the automobile he was operating, *or* by having *slackened the speed thereof and swerved* said automobile and if you find that the defendant negligently failed to do either and that such negligence of the defendant directly caused said collision or that such negligence of the defendant directly contributed in part to cause said collision and that plaintiff's taxicab and its aforesaid equipment was thereby caused to be wrecked and damaged, then the Court instructs you that in *either event* your verdict should be in favor of plaintiff and against the defendant." (Emphases added.)

Respondent contends that giving Instruction No. 3 constituted prejudicial error because (1) it used the appellant himself, under the circumstances shown in evidence, as the yardstick of when the obligations of affirmative action under the humanitarian doctrine became operative upon him; and (2) the instruction was not a complete converse of respondent's humanitarian submission and (3) was in conflict therewith.

■ In a humanitarian case a defendant may, as in a primary negligence case, undertake to absolve himself of liability on the ground he was not negligent in the respects charged in plaintiff's instructions. One way to accomplish this end is by the submission of a sole cause instruction. The appellant in this case chose the second method, a converse instruction, which by its nature does not require the hypothesization of a set of facts from which it could be found that the injuries of respondent resulted from a cause or circumstance other

than the negligence charged against appellant. Carney v. Stuart, Mo., 331 S.W.2d 558.

■ There is no set form for what is referred to as a converse instruction. Liebow v. Jones Store Co., Mo., 303 S.W.2d 660. The appellant could have submitted either the exact converse of respondent's verdict directing Instruction No. 1 or the exact converse of any essential element of such an instruction, Welch v. McNeely, Mo., 269 S.W.2d 871, loc. cit. 876(4, 5).

As to respondent's contention that Instruction No. 3 allows the jury to use the appellant as a "yardstick", appellant relies upon See v. Wabash R. Co., Mo., 259 S.W. 2d 828. The second paragraph of the instruction in that case is practically identical to the second paragraph of Instruction No. 3. A careful reading of that case discloses that the court was not ruling upon the second paragraph of the instruction in that case and did not have the question here presented before it. The court in the See case was concerned with the first paragraph of the instruction which dealt with whether or not the defendants in that case had a right to assume that plaintiff's truck approaching the railroad crossing would stop before going upon the crossing. This is amply illustrated by the cases cited at loc. cit. 831, where the court is discussing the instruction. For example, in the See case, the court at loc. cit. 831 states:

> "Plaintiff cited Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, loc. cit. 746, as authority. What was said in that case seems to us to be authority against plaintiff's contention that the instruction is erroneous."

In the Janssens case, 228 S.W.2d loc. cit. 747, the court stated:

> "* * * and there is no criticism of the second paragraph which was a converse of plaintiffs' humanitarian submission."

They are all cases on the point presented by a paragraph not now before us, although in each of them the second paragraph of the instruction is the same for all intents and purposes as the second paragraph in Instruction No. 3.

Neither can we agree with respondent that the case is controlled by Harris v. Rowden, Mo., 305 S.W.2d 25, nor Dixon v. General Grocery Co., Mo., 293 S.W.2d 415, nor Beahan v. St. Louis Public Service Co., 361 Mo. 807, 237 S.W.2d 105, nor Wilt v. Moody, Mo., 254 S.W.2d 15. The instruction in each of those cases far more clearly made the defendant the yardstick by which the jury was to measure his conduct than does Instruction No. 3.

■ "Should" according to Webster's New International Dictionary, 2d Ed., is the past tense of "shall" and its use as an auxiliary verb means "to be obliged," or "must." "Should" comprehends the thought of "ought" to have become apparent to appellant. Thompson v. Quincy, O. & K. C. R. Co., Mo., 18 S.W.2d 401. It follows that by the use of the words "should have become" the instruction means that the appellant had to act in avoidance when he was obliged to do so, or must do so, or ought to do so. Under respondent's humanitarian submission, the jury was required to be concerned with appellant's (defendant's) negligence, Hall v. Clark, Mo., 298 S.W.2d 344, there being no sole cause instruction requested or given. Lynch v. Baldwin, Mo., 117 S.W.2d 273, loc. cit. 276. A separate instruction defining the degree of care required of appellant was neither given nor requested. Neither is that definition found incorporated in any of the other instructions, nor is the phrase even used elsewhere in any of the instructions except in respondent's verdict directing instruction. In that instruction the phrase appears twice and appellant contends this supplies a sufficient guide to the jury as to the standard of care required of appellant. The first use of that phrase clearly refers to the discovery of the taxi's

position of imminent peril, and the second use of it deals with the subject of Instruction No. 3, i. e., whether or not appellant could have avoided the collision after the duty arose to act in avoidance.

In the case of Burow v. Red Line Service, 343 Mo. 605, 122 S.W.2d 919, the instruction was slightly different in that the first part thereof did state the requirement of the exercise of the highest degree of care on the part of defendant's (in that case) driver but it did not use that phrase later on when it did not require the jury to find that the defendant's motorbus could not be checked nor said motorbus stopped in time to avoid the collision by the exercise of the highest degree of care on the part of defendant's driver. The court held, 122 S.W.2d loc. cit. 920:

"The instruction did state the requirement of the exercise of the highest degree of care on the part of defendant's driver to discover plaintiff in a position of peril, and then said that defendant was entitled to a verdict if thereafter 'the speed of said motorbus could not be checked nor said motorbus stopped in time to avoid a collision.' Logically considered this instruction is more favorable to plaintiff than it would have been if the requirement as to stopping or checking speed had been limited by inserting the words plaintiff says should have been inserted. This is true because the instruction as written only authorizes a verdict for defendant if it was impossible, upon any hypothesis, for the bus driver to have stopped or checked speed. See discussion of highest degree of care in Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373; see, also, instructions discussed in Carle v. Akin, Mo.Sup., 87 S.W.2d 406; Oliver v. Morgan, Mo.Sup., 73 S.W.2d 993; Sackmann v. Wells, Mo.Sup., 41 S.W.2d 153. Certainly, since the plaintiff's main instruction gave the jury a correct statement of the degree of care imposed upon defendant, this instruction could not have misled the jury. This instruction did not conflict with any requirement of plaintiff's instruction and in this situation the instructions must be read together. McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W. 2d 37, and cases cited. While this kind of an instruction could be more clearly worded, we hold that it was not prejudicial error to give it in this case."

Insofar as respondent's contention that Instruction No. 3 was not a complete converse concerns the failure of that instruction to converse the element of a humanitarian case regarding discovered or discoverable peril, the answer is twofold in that such instructions have been held not to eliminate discoverable peril and also that it was not necessary to converse every element of respondent's humanitarian submission.

In Fisher v. Williams, Mo., 327 S.W.2d 256, instructions No. 3 and No. 4 there given are identical to and combined into Instruction No. 3 in the instant case. The same contention was raised, and at loc. cit. 260 the court held:

"But these instructions do not, either expressly or tacitly, specifically deal with either 'discovered' or 'discoverable' peril, the words are not employed and the hypothetical facts do not purport to cover that phase of humanitarian doctrine. *They, particularly instruction four, deal only with the defendant's ability to avoid hitting the plaintiff after his peril arose, whether it was discovered or discoverable, and as that subject was clearly defined and covered in the plaintiff's instructions, consequently these instructions could not have confused the jury.* Instruction three in defining 'imminent peril' is identical with the instructions in Wallace [by Kreder] v. St. Joseph Ry., L[ight], H[eat] & P[ower] Co., 336 Mo. 282,

77 S.W.2d 1011, and Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562, and in those cases it was held that the instructions were not confusing or misleading and did not unduly limit the danger zone. *Instruction four is a rescript of the instructions complained of in Welch v. McNeely, Mo., 269 S.W.2d 871, and Fantin v. L. W. Hays, Inc., Mo., 242 S.W.2d 509, and in those cases it was pointed out that the instructions did not, either in express terms or by implication, eliminate discoverable peril.* As to that subject the instructions assumed the applicability of the plaintiff's emphatic hypothesis 'that the defendant saw, or in the exercise of the highest degree of care could have seen plaintiff in such position of imminent peril.' " (Emphases supplied.)

█ In this case the appellant conceded the element of discovered peril (the facts were that appellant actually saw respondent's taxicab when it was in a position the jury could find, under the facts in evidence, constituted imminent peril) and chose to concede this element of respondent's humanitarian case, while submitting his converse instruction upon what the records disclose to be the real issue in the case, another element of respondent's humanitarian case, i. e., appellant's ability to have acted in avoidance in the manner submitted by Instruction No. 1 in time to have prevented the collision. The important thing is that Instruction No. 3 properly called for a finding upon this essential element of respondent's humanitarian case, which finding, when made, utterly destroyed respondent's humanitarian case and made recovery under his submitted theory impossible. Welch v. McNeely, supra, 269 S.W.2d loc. cit. 877, 878 [18–19].

In the case of Rosenfeld v. Peters, Mo., 327 S.W.2d 264, the court ruled contentions 1 and 2 of respondent in the instant case. At loc. cit. 268, the court stated:

"As to Instruction 4, plaintiff complains (1) that it failed to require exercise of the highest degree of care by defendant to stop his car; and (2) that it failed to include the element of discoverable peril. These are not valid objections. The first omission is really in plaintiff's favor for the reasons we thus stated in Burow v. Red Line Service, 343 Mo. 605, 122 S.W. 2d 919, 920: * * * Plaintiff's second objection was considered and properly ruled in Welch v. McNeely, Mo.Sup., 269 S.W.2d 871, where a similar converse instruction was discussed. See also Fantin v. L. W. Hays, Inc., Mo.Sup., 242 S.W.2d 509; Fisher v. Williams, Mo., 327 S.W.2d 256, decided concurrently herewith."

█ But respondent also contends that Instruction No. 3 was erroneous because it was in conflict with Instruction No. 1. Respondent argues that under Instruction No. 1, if the jury found that appellant could not have avoided the collision by merely slackening his speed, but could have avoided it by slackening speed and swerving, then the jury was instructed that the respondent was entitled to recover, while under Instruction No. 3, if the jury made the identical finding (that appellant could not have avoided the collision by slackening his speed, but that he could have avoided it by slackening speed and swerving) the jury was instructed that appellant must recover. The correct test of an instruction is how it will be understood by the average men and women composing our juries. Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541. We believe it clear that the average juror reading this instruction would read and understand it as follows:

"* * * it was then too late for defendant to slacken the speed of his automobile, or (it was then too late to) slacken the speed and swerve the automobile * * *."

The respondent's primary instruction used the phrase, "that in *either* event your verdict should be in favor of plaintiff and against the defendant." (Emphasis supplied.) Certainly the use of that word in Instruction No. 3 would have helped clarify it as "* * * it was then too late for the defendant to (either) slacken * * *." The instruction would then more clearly have stated that if defendant could do neither in time to avoid the collision, then defendant should receive their verdict. Use of the word, "either," and the phrase, "it was then too late", as indicated above, would have greatly helped this instruction. While we do not consider the instruction, in the form it was given, to be a model, we do not hold the giving of it constituted prejudicial error. Applying the test of Lewis v. Zagata, supra, we believe the instruction submits the "then too late" converse of the essential "in time thereafter" clause of respondent's humanitarian submission contained in Instruction No. 1.

The giving of Instruction No. 3 did not constitute prejudicial error and it follows that the trial court's ruling granting respondent a new trial must be reversed.

■■■■ We will next consider the appellant's appeal from the trial court's order dismissing his counterclaim. The appellant contends that since he had only one counterclaim and had a right to file it in either of the two pending actions, because his cause of action lay with equal force and efficacy against the cab driver or his employer, he should not be denied his day in court because he chose to file the counterclaim in this trial, which comes second in point of time. Appellant then contends there are two reasons why his counterclaim is not to be denied on the basis of res judicata or estoppel by judgment. The first is that the judgment in the Daum case was really a judgment in name only, and was, in fact, a settlement, since the case was terminated by a "Release and Agreement" entered into by the parties after

the jury verdict. So far as this last contention is concerned, this record does not disclose any such "Release and Agreement." The only reference to the matter this record discloses is the proceedings in chambers prior to trial, as a part of which appellant's counsel stated, "Judgment was entered on that verdict and the judgment was fully satisfied." On oral argument it was stipulated the verdict was for $10,000. This court is bound by the record before us, and we cannot go outside that record.

The second reason appellant advances is that the issues and parties are different in the Williams case than they were in the Daum case. Appellant argues that since Daum went to the jury upon three verdict directing instructions and the jury returned a general verdict, it is impossible to state which instruction the jury followed. He then urges that if the verdict was rendered on the basis of the appellant's primary negligence, the jury in the second case (the case at bar) could have still found for appellant on the counterclaim since he alleges in the counterclaim, under the humanitarian doctrine, in the disjunctive, for failure to slacken speed, or swerve, or sound a warning and contends that in that instance the verdict in the Daum case would not have fully exonerated Daum from possible liability, and thus, the respondent may still be liable to appellant on his counterclaim. Or, he continues, if the jury followed the humanitarian verdict directing instruction, since it is theoretically possible for a verdict to be given to each party where each submits a humanitarian case, the same result ensues. So far as the second contention is concerned, we do not understand the action of the trial court to be based upon either res judicata or estoppel by judgment. Those theories are merely the legalistic results of a determination of whether or not appellant's counterclaim had to be filed in the earlier (Daum) action. We do not consider the case to be ruled by whether or not the essentials of those theories are here presented, such as

whether the issues and parties are the same or different. This action must be ruled strictly upon an interpretation of appellant's counterclaim in the light of Section 509.420 RSMo 1949, V.A.M.S. The questions of identity of issues and parties as presented by a contention of res judicata and/or estoppel by judgment may bear thereon, but only incidentally as such issues may affect the determination of the principal issue of whether or not this counterclaim is such that it must have been filed in the Daum action or be deemed to have been waived by appellant.

Section 509.420 RSMo 1949, V.A.M.S. reads:

"A pleading shall state as a counterclaim any claim, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrences that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

It is respondent's contention that under the provisions of that section, any counterclaim appellant had must be filed in the Daum action, and that by failing to file one, the result of that case was not only a complete adjudication of Daum's cause of action against appellant, but was also a complete adjudication of appellant's counterclaim. In other words, the failure to file his counterclaim in the Daum action extinguished by operation of law that counterclaim.

■ The purpose of Section 509.420, supra, is to discourage separate litigations covering the same subject matter, and to require their adjudication in the same action. Cantrell v. City of Caruthersville, 359 Mo. 282, 221 S.W.2d 471. In State ex rel. Mack v. Scott, Mo.App., 235 S.W.2d 106, at page 111, this court said:

"A party failing to set up by way of counterclaim in the original suit any related claims he may have against the opposite party waives the claims and cannot later assert them. This is the construction placed on this statute by the Missouri courts, State ex rel. Fawkes v. Bland [357 Mo. 634, 210 S.W.2d 31], supra; Cantrell v. City of Caruthersville, supra, and is the construction given the original Federal rule 13(a), Fed.Rules Civ.Proc. 28 U.S.C.A., which is identical with our Section 73, by the Federal courts. See Vol. I Carr, Missouri Civil Procedure, pp. 525–535."

■ We believe the appellant's counterclaim is governed by the plain language of section 509.420, supra. The appellant had the claim against Daum and/or respondent at the time he filed his answer in the Daum case; i. e., it had fully matured. Appellant's counterclaim did not require for its adjudication the presence of any third parties of whom the court could not acquire jurisdiction. It could be fully adjudicated in the suit against Daum, as appellant admits by stating the obvious fact that his suit lay with equal force and effect against Daum or respondent. In Cantrell v. City of Caruthersville, supra, 221 S.W.2d at page 474, the court defined the words "claim", and "transaction" in this manner:

"The word 'transaction' as used in the Federal Rule 13(a) is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediacy of their connection as upon their logical relationship. This liberal view is now well established. Lesnik v. Public Industrials Corporation [2 Cir., 144 F.2d 968], supra; Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370. The word 'claim' and the word 'transaction' are both of broad meaning. *The word 'claim' does not refer*

*to the form of the action but to the underlying facts combined with the law giving a party a right to a remedy of one form or another based on the claim.* 'Transaction' is a word of still broader meaning. *'Transaction' should be broadly construed to include all of the facts and circumstances which constitute the foundation of a claim,* Grue v. Hensley, 357 Mo. 592, 210 S. W.2d 7, at page 10, 'all the facts and circumstances out of which the injury complained of * * * arose.' Ritchie v. Hayward, 71 Mo. 560, at page 562." (Emphases supplied.)

In that same opinion, the term "subject matter" is defined at loc. cit. 474 of 221 S.W.2d as follows:

" 'Subject' of action (or subject matter of an action) 'is not a word like "horse" or "cow," which can mean but one thing in whatever position it be placed, but it may be applied and probably rightly applied by different minds to different things, tangible or intangible, under the same circumstances.' "

and at loc. cit. 475 of 221 S.W.2d:

" 'Subject-matter of the action' is not the cause of action, nor the object of the action. It rather describes the physical facts, the things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted."

The appellant's claim therefore arose from the transaction or occurrence that was the subject matter of Daum's action; i. e., the collision in evidence. Keller v. Keklikian, 362 Mo. 919, 244 S.W.2d 1001; and see also Big Cola Corporation v. World Bottling Co., 6 Cir., 134 ·F.2d 718; Williams v. Robinson, D.C.D.C., 1 F.R.D. 211. The conclusion is inescapable that appellant's counterclaim was compulsory and the filing of it in the Daum action was mandatory, Keller v. Keklikian, supra. It was not filed and was thereafter barred.

Hayden v. Yelton, Mo.App., 237 S.W.2d 249, involved an interpretation of this same section. In that case, there was an intersection collision between an automobile owned by respondent Yelton, but driven by another respondent, Smith, and an automobile owned and driven by the appellant, Hayden. Yelton filed against Hayden in Clinton County Circuit Court for property damage. Hayden then filed a motion requesting leave to file his petition as third party plaintiff against Smith. The motion was sustained and the petition filed and Smith served as a third party defendant. Hayden then filed his counterclaim against Yelton which asserted virtually the same language as the third party claim against Smith. Hayden next dismissed his third party petition against Smith and filed suit in DeKalb County against Yelton and Smith, and these parties answered. The Clinton County case came on for trial and Hayden dismissed his counterclaim against Yelton and trial was had on Yelton's petition against Hayden, with verdict, judgment and satisfaction thereof in favor of Yelton. Yelton and Smith then filed their motion in DeKalb County to dismiss Hayden's action against them, contending, among other things, that Hayden's only cause cf action was to present his claim against either of them in the Clinton County case, and that by failure to do so, Hayden waived his claim. The trial court sustained the motion to dismiss, basing its action upon section 509.420, supra, and Hayden appealed. The Kansas City Court of Appeals, Broaddus, J., held that, loc. cit. 251:

"Unless the relationship of master and servant or principal and agent existed between Sarah Yelton and Hubert Smith there was no liability on the part of Sarah Yelton to appellant James Hayden. (Citing cases.) * * * Under that situation, Section 73 of the New Code would have no application because under it there can be no counterclaim in the absence of a 'claim * * * against any opposing party.' "

The court stated that Hayden's claim was solely against Smith, the driver, and therefore, loc. cit. 252:

"Appellant (Hayden) as a third party plaintiff in the Clinton County action had a right to dismiss his third party petition in that cause, and institute the present action against Hubert Smith. * * *

"In any event, appellant, Hayden, cannot pursue his present action against respondent Sarah Yelton. If he had an existing counterclaim against her, then under Section 73, supra, he was compelled to file it in the Clinton County action."

In the instant case, the relationship of master and servant, found lacking in the Hayden case, is admittedly present. The only difference in the cases is that here the driver (Daum) sued first, while in the Hayden case the owner filed suit first. The case is a clear recognition of the principle involved in the instant case. Certainly the appellant could have proceeded under section 509.470 RSMo 1949, V.A.M.S., to bring in the respondent in the Daum action after he filed his counterclaim against Daum, and could have amended that counterclaim to state also against respondent if that was his desire.

Neither can appellant be sustained on the basis that regardless of what happened to his counterclaim against Daum, he still had a counterclaim against the respondent available to file in the instant action. The Daum action was a complete adjudication of Daum's claims against the appellant and, under section 509.420, supra, as herein interpreted, of appellant's claims against Daum. Respondent's liability was secondary and derivative, while Daum's was primary, and absent any delict of the master other than through the servant (a state of facts admittedly not contended here) the exoneration of the servant removes the foundation upon which to impute negligence to the master. This was the holding of our State Supreme Court, en banc, in State ex rel. Shell Petroleum Corp. v. Hostetter, 348 Mo. 841, 156 S.W.2d 673, loc. cit. 676. In the case of New Orleans & N. E. R. Co. v. Jopes, 142 U.S. 18, 12 S.Ct. 109, 111, 35 L.Ed. 919, the United States Supreme Court said:

"If the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity."

Other Missouri cases which hold that where the cause of action against the servant has been extinguished, no recovery can be had against the master, are the following: Stoutimore v. Atchison, T. & S. F. R. Co., 338 Mo. 463, 92 S.W.2d 658; McGinnis v. Chicago, R. I. & P. R. Co., 200 Mo. 347, 98 S.W. 590, 9 L.R.A.,N.S., 880; Cameron v. Howerton, Mo., 174 S.W. 2d 206; Atterbury v. Temple Stephens Co., 353 Mo. 5, 181 S.W.2d 659.

It follows that the trial court was not in error to dismiss appellant's counterclaim and that the court's ruling upon appellant's motion for new trial should be affirmed.

The Commissioner recommends that the trial court be affirmed in its denial of appellant's motion for a new trial on appellant's counterclaim, and reversed on granting respondent a new trial. It follows that the judgment upon the jury's verdict should be reinstated.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court.

The judgment of the trial court is therefore affirmed in its denial of appellant's motion for a new trial on appellant's counterclaim, and reversed on granting respondent a new trial. It follows that the judgment upon the jury's verdict should be reinstated.

It is so ordered.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.