Joseph **LEVINE**, Appellant,

v.

The **JALE CORPORATION**, Respondent.

No. 24433.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 3, 1967.

Application to Transfer Denied May 8, 1967.

Rope, Shanberg, Rope & Gibson, Herbert M. Rope, Sherman L. Gibson, Kansas City, for appellant.

George T. O'Laughlin, Kuraner, Oberlander, Lamkin, Dingman & O'Laughlin, Kansas City, for respondent.

HOWARD, Presiding Judge.

This case comes to the writer on reassignment. It is a suit for damages for personal injuries received as a result of stepping into a hole or depression in the defective sidewalk in front of the apartment house at 708 West 48th Street, Kansas City, Missouri, owned by respondent, The Jale Corporation. The suit was originally brought against The Jale Corporation and against Irving C. Rubin and Anna Rubin, owners of the apartment house next door at 712 West 48th Street. Although this case involves an allegedly defective sidewalk, the city of Kansas City, Missouri, is not a party. The Rubins were let out of the case by directed verdict at the close of plaintiff's evidence. Trial to a jury resulted in a verdict in favor of appellant in the amount of $3,500.00, but the trial court thereafter entered judgment in favor of respondent, The Jale Corporation, in accordance with its motion for directed verdict filed at the close of all the evidence. The trial court also sustained respondent's motion for new trial in the alternative. Plaintiff has appealed. We shall refer to appellant Levine as plaintiff and to respondent, The Jale Corporation, as defendant.

West 48th Street in Kansas City, Missouri, runs east and west. The two apartment houses mentioned herein are located on the north side of West 48th Street, facing south. Between these two apartment houses there is what is referred to, variously, as an alley or a driveway. It leads to a dead end at the back of the apartment house properties, and there is not room to turn around in the driveway. Vehicles using the driveway go in forward and back out. At its narrowest point, it is from 7 to 10 feet wide. People having business at the apartment houses use this driveway for their trucks and other vehicles. It is not a thoroughfare. The apartment house numbered 708, belonging to defendant, is east of this driveway and the apartment house numbered 712, belonging to the Rubins, is west of the driveway. The two apartment houses are separated only by this driveway. In front of these apartment houses is a curb and sidewalk which extends from the terraced front lawn of each apartment house to the street. There is no parking. There is no sidewalk across the driveway. The sidewalk and curb come up to the drive and the curbing curves around the end of the sidewalk and extends into the terrace on each side of the driveway. The driveway is at street level, and is thus lower than the level of the sidewalk by the height of the curbing. In walking along this sidewalk, one must step down from the sidewalk and curbing on one side, walk across the driveway, and then step up onto the curb and sidewalk on the other side of the driveway.

The accident occurred sometime after 9 P.M. on April 9, 1964. Plaintiff had returned home about 9 P.M. and soon thereafter left his residence in an apartment in the building at 712 West 48th Street, to go to a restaurant in the next block east, to have supper. It was dark and he testified he could barely see the outline of the sidewalk and curb. Plaintiff walked eastward from his apartment house, along the sidewalk, stepped down to the level of the driveway, walked across the driveway, and in stepping up onto the curb on the east side of the driveway, he stepped into an indentation, or hole, or a worn place in the curbing or sidewalk, and turned his ankle and foot. He testified that it felt like he had sprained his ankle. He did not fall. Plaintiff limped on to the restaurant, had supper and returned home where his wife treated his in-

jured foot and ankle and early next morning, he sought medical attention. It developed that he had a fracture of the fifth metatarsal bone of his right foot. In view of the issues presented, we need not go into detail concerning the medical evidence.

Plaintiff and his wife testified that the driveway had been structurally the same all during the fifteen years which they had lived at 712 West 48th Street. They did not know when the driveway was constructed or who constructed it or was responsible therefor. The sidewalk and curb in front of their apartment house, at 712 West 48th Street, had been repaired sometime around 1958 and was in good condition at the time of the accident. The sidewalk in front of the apartment owned by defendant, at 708 West 48th Street, was in bad shape. The curbing was worn and was crumbling away, and the sidewalk next to the curbing, along the curve at the driveway and along the curb line between the sidewalk and the street was broken and depressed up to 2 inches in some places.

Plaintiff's evidence showed that the driveway was used at times by automobiles, but primarily by garbage trucks, trash trucks, furniture vans, delivery trucks and trucks driven by repairmen, maintenance men, etc. The drivers of these vehicles had business with those who operated the apartment houses, such as those collecting garbage, trash, etc. and also with various tenants in the two apartment buildings, such as the drivers of furniture vans, delivering and taking away furniture when tenants moved, and the drivers of other trucks of various sizes, repairing appliances belonging to tenants and delivering merchandise ordered by tenants. Because of the narrowness of the driveway, these trucks, and especially the larger and heavier ones, often ran and drove their wheels over the curb and sidewalk on each side of the driveway in turning into and backing out of the drive. The plaintiff testified that he did not know what caused the defects, that he did not know that the trucks caused the depres-

sions, holes and broken places in the curb and sidewalk, and that he did not know if these were caused by freezing. Plaintiff knew of, and had mentioned to others, the defective condition of the curb and sidewalk in front of defendant's apartment house for several months prior to the accident.

There was no showing that either the defendant, or any of its tenants, operated or were responsible for the operation of any of the trucks or other vehicles which used this driveway and ran their wheels over the curb and sidewalk at the sides of the driveway.

Plaintiff's evidence as to the physical condition of the driveway and sidewalk and the operation of vehicles using the driveway came solely from the testimony of plaintiff and his wife. Defendant's only witness was a photographer, who gave evidence of measurements of the driveway and identified pictures thereof. Plaintiff relies on only one point for reversal and this is that the trial court erred in setting aside the verdict and entering judgment for defendant in accordance with its motion for a directed verdict, or in the alternative, granting defendant a new trial. Plaintiff asserts that he made a submissible case under the existing law.

Plaintiff does not contend that defendant's liability results from any affirmative act committed by defendant; rather he asserts that the use of the driveway by the various trucks and other vehicles, as described above, constituted a special use of the sidewalk by and for the benefit of defendant and that such special use caused the defects in the sidewalk and that the defendant negligently failed to repair such defects and that such negligence caused plaintiff's injury. In support of this contention plaintiff relies primarily on a citation from 63 C.J.S. Municipal Corporations § 861, p. 226, where it is stated, "Thus the abutting owner or occupant will be liable where he uses the sidewalk for his own private benefit or convenience and fails to

exercise reasonable care to prevent injury to persons lawfully using the way." He further quotes from a later paragraph in this same section, page 227: "Where a sidewalk is used as a driveway for vehicles by an abutting owner or occupant, the special use carries with it the duty not to permit the use to create conditions unsafe for the passing thereon of pedestrians, or if it does create such conditions not to allow them to remain for an unreasonable time, * * *" Although this quotation asserts that the use of a sidewalk for a driveway by an abutting property owner constitutes a special use, an examination of the cases cited in support thereof reveals, in each instance, a fact situation with something more than mere user, on which liability is based.

We have carefully examined all of the authorities cited in C.J.S. supra, and by the parties, together with a large number of additional cases discovered through our own not inconsiderable research and have been unable to find any case wherein liability was imposed upon the abutting landowner in a fact situation comparable to that presented in the case at bar. See Annotation 88 A.L.R.2d 331. There are numerous cases where the landowner, or his predecessor, has removed the existing sidewalk constructed by the city and in its place has installed a specially constructed driveway for use in connection with the abutting premises. In such cases it appears that the law imposes upon the abutting landowner a duty, in the first instance, to replace the sidewalk with a structure which is reasonably safe for pedestrian traffic, and having affirmatively changed the condition of the existing sidewalk by the installation of the special driveway, the landowner has a continuing duty to maintain such special structure in a condition reasonably safe for pedestrian travel. See among the many cases, Moore v. Monarch Gasoline & Oil Co., 225 Mo.App. 115, 35 S.W.2d 669; Cuddy v. Shell Petroleum Corp., Mo.App., 127 S.W.2d 24, affirmed State ex rel. Shell Petroleum Corp. v. Hostetter, 348 Mo. 841, 156 S.W.2d 673;

Martin v. Gilmore, Mo.App., 358 S.W.2d 462; Granucci v. Claasen, 204 Cal. 509, 269 P. 437, 59 A.L.R. 435; Joel v. Electrical Research Products, Inc., C.A.2, 94 F.2d 588; and Barker v. Kroger Grocery & Baking Co., C.A.7, 107 F.2d 530. Likewise, it appears that the abutting landowner has a duty to refrain from depositing foreign objects on the sidewalk through his use thereof, as a part of the driveway or otherwise, which objects would render the sidewalk unsafe for pedestrian traffic. This seems to apply to any use of the sidewalk and is not necessarily restricted to the use of the sidewalk as a driveway. See Texas Company v. Williams, 228 Ala. 30, 152 So. 47; James v. Burchett, 15 Wash.2d 119, 129 P.2d 790; Kopfinger v. Grand Central Public Market, 60 Cal.2d 852, 37 Cal.Rptr. 65, 389 P.2d 529 and Lee v. Ashizawa, 60 Cal.2d 862, 37 Cal.Rptr. 71, 389 P.2d 535.

From the cases it is abundantly clear that the abutting landowner has a duty to refrain from any affirmative action causing a dangerously defective condition in the sidewalk. This duty applies to all portions of the sidewalk, both those forming part of the driveway and those not forming part of the driveway. This duty encompasses the operation of heavy vehicles, which, when passing over the sidewalk, cause breakage, cracks or holes therein. See Mullins v. Siegel-Cooper Company, 183 N.Y. 129, 75 N.E. 1112; Degnan v. City of New York, 224 App.Div. 357, 231 N.Y.S. 181; Hague v. McHugh, 168 Wash. 575, 12 P.2d 748; Barker v. Kroger Grocery & Baking Co., C.A.7, 107 F.2d 530. However it does appear that the sidewalk is a part of the street or highway and that members of the public and the owner both have a right of ingress and egress to and from the adjoining property over and across the sidewalk. Such right of ingress and egress includes vehicular traffic, as well as pedestrian traffic. When such use is reasonable in nature and amount, the resulting wear and tear on the sidewalk at the point of the driveway does not create liability on the part of the abutting land-

owner for defects in such sidewalk resulting from the use thereof as part of the driveway. See Daly v. Rector, Church Wardens and Vestrymen of Trinity Church, 188 App.Div. 280, 176 N.Y.S. 734; Atkinson v. Sheriff Motor Co., 203 Iowa 195, 212 N.W. 484; City of Bessemer v. Brantley, 258 Ala. 675, 65 So.2d 160; Adams v. Grapotte, Tex.Civ.App., 69 S.W.2d 460, affirmed 130 Tex. 587, 111 S.W.2d 690; Winston v. Hansell, 160 Cal.App.2d 570, 325 P.2d 569, 88 A.L.R.2d 326 and Graalum v. Radisson Ramp, Inc., 245 Minn. 54, 71 N.W.2d 904.

Examining the facts of the case at bar in light of the foregoing authorities, the evidence does not reveal that the defendant, or any of its predecessors, removed the sidewalk and installed a structure specially designed for its own uses, nor does it reveal that any vehicle operated either by the defendant, or its tenants, or any one under the control of either, caused the defects in the sidewalk, which resulted in plaintiff's injuries. Likewise, we are not dealing with a case where foreign objects have been deposited on the sidewalk as a result of defendant's use thereof. Plaintiff contends that the use of the driveway by trash trucks, delivery trucks, etc., as described above, constituted a special use by and for the benefit of defendant, and that, therefore, defendant is liable for any injury resulting from defects in the sidewalk caused by such use. Since no issue is raised on this appeal, we assume, for the purposes of this case only, that the defects complained of were, in fact, caused by the traffic described. Even so assuming, it appears that the traffic was merely that normally to be expected to and from an apartment house in the city of Kansas City, Missouri. Nothing appears which would make this traffic unusual or unreasonable in either kind or amount. In such circumstances, the California court in Winston v. Hansell, 160 Cal.App.2d 570, 325 P.2d 569, 88 A.L.R.2d 326, specifically found that the use of a driveway across a sidewalk would not amount to a special use of the sidewalk by the abutting landowner. Furthermore, we reiterate that the vehicular traffic did not include vehicles owned or operated by defendant, or its tenants, or anyone under its control. The courts of Nebraska and Ohio have considered comparable situations and both have concluded that the abutting landowner is not responsible for the action of delivery trucks, etc., operated by those over whom the landowner had no control, even though such operation was incident to ingress and egress to the abutting property. See Andresen v. Burbank, 157 Neb. 909, 62 N.W.2d 135 and Eichorn v. Lustig's, Inc., 161 Ohio St. 11, 117 N.E.2d 436. Consequently, and up to this point, we can find no basis for imposing liability on the abutting landowner.

Plaintiff has cited the cases of Lee v. City of Baton Rouge, La.App., 141 So.2d 125 and Stone v. City of Seattle, 64 Wash.2d 166, 391 P.2d 179, as supporting his contention that the law casts liability on abutting landowners in the factual situation presented in the case at bar. We can not agree. Lee v. City of Baton Rouge, supra, involved a question of summary judgment in behalf of the city, where the plaintiff had settled with the abutting property owner. Because of the summary judgment proceeding, the Louisiana Court held that it was bound by the allegation of negligence as to the abutting property owner found in the petition. The court assumed such allegation to be true and made no finding either of fact or liability. In Stone v. City of Seattle, supra, an abutting apartment house owner constructed parking places on a 16' wide strip of ground between the apartment house and the sidewalk; he rented these parking spaces to various individuals. The parking spaces were so constructed that it was more convenient, and perhaps necessary, for some of the tenants to drive their vehicles over the sidewalk at a point which was not part of the driveway rather than going in the driveway. The Washington Supreme Court approved a declaration of the trial court that under the circumstances shown the abutting landowner could reasonably foresee that his tenants would drive

their vehicles over the sidewalk at a point not part of the driveway and that such fact constituted a special use of the sidewalk by such landowner. Again this affords no assistance in solving the problem presented by the case at bar.

The case which is probably factually most similar to ours is Barker v. Kroger Grocery & Baking Company, C.A. 7, 107 F.2d 530. Here the plaintiff fell on a cracked sidewalk at the edge of a driveway and sustained injuries. The driveway had been specially constructed by defendant's predecessor. It was narrow and trucks using the driveway for access to the area behind the Kroger store habitually ran their wheels over the sidewalk on each side of the driveway. Trucks belonging to both Kroger and others used the driveway. There was specific evidence that large Kroger vehicles, when entering and leaving the driveway, caused cracks both in the driveway and in the sidewalk on each side of the driveway. Under such circumstances the court held, since the evidence showed that defendant's trucks caused at least some of the cracks which resulted in plaintiff's fall, that this was sufficient to cast liability upon the defendant, and that the plaintiff was not required to show that a specific truck belonging to defendant caused the specific crack which caused plaintiff to fall. Although there was a specially constructed driveway substituted for the sidewalk in this case, the liability was apparently cast upon defendant because of its affirmative action in breaking up the sidewalk with its heavy vehicles. Although this case seems to follow others imposing liability on one who creates defects in the sidewalk through the operation of its own heavy vehicles, it is interesting to note that the opinion does not contain one single citation of authority. Because of the special facts shown and relied on in this case, it is not decisive in determining the issues presented in the case at bar.

Turning now to an examination of Missouri authority, including but not limited to those cases cited by the parties, we find that Missouri courts have long held that where an owner is permitted to make a special use of the sidewalk, he is liable for defective conditions in such sidewalk resulting from such special use. However, when these cases are examined, it is found that the landowner has caused affirmative changes to be made in the structure of the sidewalk, and that such changes were either structurally defective or were allowed to fall into disrepair. These cases refer to such things as gratings, manholes, water meters, excavations, etc., in or near the sidewalk, which create the dangerous conditions. See Perrigo v. City of St. Louis, 185 Mo. 274, 84 S.W. 30 and cases cited therein. Our courts have held that the abutting landowner is liable for any condition which he caused, which condition in turn caused or contributed to the injury of the plaintiff. Thus in Shafir v. Sieben, Mo., 233 S.W. 419, 17 A.L.R. 637, the landowner and his contractor had completely obstructed the sidewalk with a pile of building material and they were held liable to the plaintiff, who was injured by being struck by an automobile when walking in the street, in order to go around the obstruction on the sidewalk. Likewise, in Sutton v. Fox Missouri Theatre Co., Mo., 356 S.W.2d 41, our Supreme Court found that the abutting property owner was liable for injuries incurred by the plaintiff when she attempted to skirt a crowd of theatre customers blocking the sidewalk.

Turning now to driveway cases, we first consider Moore v. Monarch Gasoline & Oil Co., 225 Mo.App. 115, 35 S.W.2d 669. In this instance, the defendant had torn out the existing city sidewalk and replaced the same with a sloping driveway for use of its customers in its gasoline filling station. Plaintiff fell on this sloping driveway when it was covered with snow and ice. The court held that the jury could find that the defendant was negligent in substituting a dangerously defective, specially constructed, driveway for the previously existing sidewalk. In Cuddy v. Shell Petroleum Corp., Mo.App., 127 S.W.2d 24, the defendant's

predecessor had constructed a sloping driveway to a filling station, and plaintiff fell when such driveway was covered with snow and ice. Again the court held that the jury could find that the normal sidewalk had been replaced by a dangerously defective sloping driveway and that the defendant was liable for plaintiff's resulting injuries, when it maintained and used the defective structure installed by its predecessor. This holding was affirmed by our Supreme Court in State ex rel. Shell Petroleum Corp. v. Hostetter, 348 Mo. 841, 156 S.W.2d 673. In Martin v. Gilmore, Mo.App., 358 S.W.2d 462, it did not appear who had removed the sidewalk and replaced it with a specially constructed driveway, with steeply sloping concrete on each side thereof. Plaintiff fell on such sloping side of the driveway, when it was covered with ice and snow. The defendant had occupied the premises for thirty years or more, and had owned the premises for at least the last ten years, during all of which time it had maintained and used such drive. The court held that the jury could find that the driveway was defectively constructed and that defendant was negligent in maintaining and using such defective structure.

In the case at bar we have no defective structure. The defects alleged to have caused plaintiff's fall consist of broken places or holes in the curb and sidewalk at the side of the driveway, resulting from vehicular traffic. These defects were not shown to have been caused by any vehicle operated by defendant, or anyone under its control, or for whose actions it was responsible. Defendant, and those having lawful reasons to come and go to and from the apartment house, had a right to such ingress and egress over the street and sidewalk, as part of the highway, and the use has not been shown to be excessive or unreasonable in either kind or amount. Under such circumstances, we conclude that the law, as indicated in the foregoing authorities, does not cast liability on the abutting property owner. The most recent case in this state considering the liability of an abutting property owner for defective sidewalks is Hart v. City of Butler, Mo., 393 S.W.2d 568. Although this case did not involve a driveway, the court therein carefully considered the basis for such liability. It was there pointed out that as a general rule the duty and obligation to keep and maintain the public sidewalk in a reasonably safe condition for use by pedestrians rests solely upon the city. However, it was also pointed out that there is a well established exception to such rule, which imposes liability on an abutting landowner, where he creates a dangerous condition "by his affirmative act." The court further stated that the abutting landowner "is to be held liable to this plaintiff only upon proof that the condition causing her injuries was created by its own affirmative act." The court also said concerning the abutting landowner, "It is liable only if, by its willful act or negligent omission, it caused the pipe to create a dangerous obstruction on the sidewalk." The court there concluded, as we conclude in the case at bar, that "the record is devoid of any proof that the condition causing plaintiff's injuries was created by the [abutting landowner's] affirmative act."

■ On the basis of the foregoing we conclude that there is no evidence of any affirmative act on the part of the defendant in the case at bar, which caused the defects resulting in plaintiff's injury and that, under the fact situation revealed, the trial court properly entered judgment for defendant. Such judgment is affirmed.

All concur.