BETHESDA ARMATURE COMPANY, INC. ET AL. V.
PATRICIA ANNE GORMLEY SULLIVAN ET AL.

[No. 510, September Term, 1980.]

*Decided January 8, 1981.*

The cause was argued before LOWE, MASON and WILNER,
JJ.

*Don F. Ryder, Jr.,* with whom were *Andrew E. Bederman*
and *Schroeder & Ryder* on the brief, for appellants.

*William T. Wood,* with whom were *Wood & Rohrbaugh* on the brief, for appellee Sullivan. *Hugh E. Donovan,* with whom were *Donovan & Nash* on the brief, for appellee Montgomery County, Maryland.

WILNER, J., delivered the opinion of the Court.

The accident giving rise to this litigation occurred on June 21, 1977. Patricia Anne Sullivan, appellee, had brought an electric motor to appellant Bethesda Armature Company (Bethesda) to have it repaired, and was returning on the 21st to retrieve it. She parked her station wagon directly in front of Bethesda's place of business at 6811 Reed Street, and, having transacted her business, carried the motor back to her car and placed it inside through the rear tailgate. The driver's side of the car was next to the curb, and it was in the course of rounding the left rear of the car on her way to enter the vehicle that she slipped and fell.

The accident occurred, she said, when she stepped up on a curb and it crumbled and gave way, causing her to lose her balance. She attempted to steady herself with her other foot, but it too slipped because of the deteriorated condition of the concrete. It is clear that the area in which Ms. Sullivan fell was part of the public walkway that separated Bethesda's building from Reed Street, but that it was a part of that walkway initially constructed by Bethesda's lessor as a driveway/apron; and therein lies the legal issue forming the basis of this appeal.

Ms. Sullivan and two of her adult children sued Montgomery County, the local body politic responsible for maintaining the public walkways, as well as the owners, lessee, and sublessee (Bethesda) of the abutting property, alleging, alternatively, that each had a duty to maintain the area in which she fell. Various cross-claims were filed among the codefendants.

At the conclusion of the evidence, all defendants moved for directed verdict, the county and the property owners/lessees each disclaiming any responsibility to maintain the area in question. All motions were denied, and the entire claim by

Ms. Sullivan against all defendants was submitted to the jury.[1] The jury returned a plaintiff's verdict for $27,000, but only against the property owners and lessees, who are the appellants here. That verdict served, of course, to exonerate the county. When the court overruled appellants' motion for judgment N.O.V., they appealed, claiming error in the denial of their motions for directed verdict and judgment N.O.V.

In considering such motions, of course, both the trial court (and on review this Court) must consider the evidence in a light most favorable to the party against whom the motion is made, in this case Ms. Sullivan. *See Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 328 (1978). Here, although some of the evidence was in conflict, the truly relevant part of it was not. We are dealing essentially with a question of law, one that involves the interplay among three basic propositions and a determination of which of them will control.

The first proposition, well settled in the law, is that a storekeeper or property owner owes a duty to his business invitees to maintain his premises in a reasonably safe condition and to give warning of latent or concealed perils. *See Lloyd v. Bowles,* 260 Md. 568, 572 (1971). This duty extends not only to the store itself, but as well to such area abutting it as is under the storekeeper's control and likely to be used by his customers. *See Dalmo Sales of Wheaton, Inc. v. Steinberg,* 43 Md. App. 659, *cert. den.* 286 Md. 745 (1979).

The second proposition is equally well settled — that where the area in question is part of a public walkway, the duty of care and maintenance (and the concomitant liability arising from the negligent performance of that duty) generally rests with the local body politic and not with the

---

1. The claim on behalf of the two adult children, set forth in Counts IV and V of the Amended Declaration, was based upon the alleged "loss of services, fellowship and companionship, both temporary and permanent, all to the detriment of their family relationship." In effect, this was loss of family consortium. That much of the action was aborted when the court sustained demurrers to those two counts without leave to amend. The children have entered a cross-appeal from that ruling.

abutting property owner. *See, for example, Matyas v. Suburban Trust Co.,* 257 Md. 339 (1970); *Weisner v. Mayor of Rockville,* 245 Md. 225 (1967); *Citizens Savings Bank v. Covington,* 174 Md. 633 (1938). This is a basic common law principle that has frequently been confirmed by statute or local ordinance.

The third proposition is in the nature of an exception to the second and a reaffirmation of the first. Occasionally referred to as the "special use" doctrine, it holds that if an abutting owner, by virtue of some extraordinary use that he makes of the walkway, creates a special hazard on it, he and not the body politic is answerable for any damage caused by that special hazard. *See Citizens Savings Bank v. Covington, supra,* 174 Md. 633; Restatement of Torts 2d, § 350.

The precise question is whether the nature and use of the area in which Ms. Sullivan fell, as disclosed by the evidence most favorable to her, was such as to invoke the application of this "special use" doctrine.[2] Some background is in order.

The premises in question — 6811 Reed Street — was first occupied by Bethesda in 1949. At the time, Reed Street was unpaved, and there were no sidewalks or curbs. The building, which was situate only about six feet from the street, had an overhead garage-type door allowing vehicular entry. In or about 1952 or 1953, Bethesda's lessor, Mr. Perry, constructed a short driveway apron connecting the dirt street to the garage door. This apron, wider than it is long, is made

---

2. Unfortunately, this issue was not so clearly presented to the jury. The court correctly instructed the jury with respect to the first two propositions — the storekeeper's duty to provide a safe premises and the county's duty to maintain the public walkway. It said nothing about the third proposition, however. Instead, it (correctly) advised the jury that, despite its general duty of maintenance, the county would have no liability unless it had actual or constructive knowledge of the defect. In light of testimony as to the absence of such knowledge, it is entirely possible — indeed likely — that the favorable verdict to the county was based not upon a finding of special use or hazard but rather upon a finding that the county had no notice of the defect. That would have been a legitimate finding supported by the evidence, and thus sufficient to exonerate the county quite apart from the application *vel non* of the third proposition. The problem is that if the third proposition is not applicable and the area in question is part of the public walkway, appellants would have no liability either.

of cement and slopes gently from the building to the street. As part of the construction of the apron, Perry installed curbs on the sides of it, running essentially perpendicular to the street but curving away at the mouth where the apron joins the street.

At some later time, but before any improvements were made to the street, the overhead garage-type door was removed and replaced with a wooden front with normal pedestrian doors. From that point — somewhere between 1953 and 1956 — *the concrete apron ceased to be used as a driveway,* but served instead as a pedestrian walkway from the street to the entrance to the building. After construction of the apron, someone put in curbing along Reed Street, although it is not entirely clear who installed that curbing.

In 1956 or 1957, Bethesda put in a sidewalk in front of the building. Both the curbing parallel to Reed Street and the curbing that framed the apron were, of course, in place at the time. Finally, in 1969, Reed Street, and an adjacent right-of-way extending seven feet on either side of it (and thus including the sidewalk built by Bethesda), were dedicated to and accepted by Montgomery County as part of the county road system. The record shows that this acceptance was made after an on-site inspection of the entire right-of-way by the county road maintenance department, and was in accord with the then-applicable ordinance governing the acceptance of such roads and thoroughfares.[3]

The situation as Ms. Sullivan found it in June, 1977, was essentially as follows. A sidewalk ran the length of Reed Street, as did a curb and gutter. Directly in front of the entrance to Bethesda's office, however, it was interrupted by

---

3. Section 24-21 of the 1965 County Code provided:

"The [County] council, by ordinance adopted pursuant to section 2-28 of this Code, may prescribe the terms and conditions upon which any street, alley, road or thoroughfare which has been acquired by the county or dedicated to public use may be accepted, and by resolution may authorize the county manager to accept any such street, alley, road or thoroughfare upon such terms and conditions. *Upon the acceptance of any street, alley, road or thoroughfare, it shall become a part of the county road system and shall thereafter be maintained by the county at its expense....*" (Emphasis supplied.)

the sloping apron built by Mr. Perry. At the building line, and for about two or three feet toward the street, the apron was essentially level with the sidewalk; but, because of the slope, the three- or four-foot section of the apron closest to the street was lower than the adjoining sidewalk and was separated from it by the lateral curbs installed when the apron was built. Neither the sidewalk, the lateral curbs, nor the apron were in very good condition, all showing signs of deterioration. As noted, it was on the lateral curb built as part of the apron, and upon the apron itself, that Ms. Sullivan fell.

It is with this background — the undisputed fact that the locus of appellee's fall was within the public walkway dedicated to and accepted by the county, attenuated by the circumstances of its construction and use — that we consider the relevance of the "special use" doctrine.

The "special use" doctrine covers a broad spectrum of circumstances, from obstructions or impediments (such as cellar doors, protruding pipes, valves, meter boxes, "manhole" or hatch covers, and the like) placed in the walkway, to alterations that in some way encourage the accumulation of ice and snow.[4] Many of the "ice and snow" cases have involved driveways or ramps of one kind or another that intersect the public walkway — entranceways to service stations or other commercial establishments built for the special use of the establishment, its customers, or its suppliers; and the question has arisen as to whether such a driveway or ramp qualifies as a "special use" sufficient to charge the abutting owner with the duty to maintain it in safe condition.

The courts considering that question have reached different results, some concluding that such an entranceway does

---

4. *See, for example, Citizens Savings Bank v. Covington, supra,* 174 Md. 633; *Irwin v. Sprigg,* 6 Gill 200 (1847); *Jankowski v. Bridgeport,* 373 A.2d 1 (Conn. App. 1977); *Jensen v. Johnson,* 230 N.W.2d 61 (Minn. 1975); *Cool v. Vesey,* 499 P.2d 642 (Colo. App. 1972); *Crosswhite v. Lincoln,* 175 N.W.2d 908 (Neb. 1970); *Cuddy v. Shell Petroleum Corp.,* 127 S.W.2d 24 (Mo. App. 1939), *aff'd sub nom. State ex rel. Shell Petroleum Corp. v. Hostetter,* 156 S.W.2d 673 (Mo. 1941); *Barker v. Kroger Grocery & Baking Co.,* 107 F.2d 530 (7th Cir. 1939), *cert. den.,* 309 U.S. 656 (1940).

constitute a special use and some concluding that it does not.[5] Maryland has not yet addressed this aspect of the doctrine, and this is not the occasion for us to do so. Even if we were to align ourselves with the courts that have recognized the "special use" theory in terms of driveways, as urged by appellee, it would be inapplicable in this case.

Despite the parties' continuous reference to the apron as a "driveway," the fact is that it is not a driveway and has not been used as a driveway for more than 20 years. Notwithstanding the manner of its construction — its slope to the street and consequent difference in elevation from the abutting part of the sidewalk — since the early 1950's, it has served as nothing more than part of the continuous pedestrian walkway paralleling Reed Street. Once the garage doors were removed, thus precluding vehicular entry to the building, and certainly since the sidewalk, curb, and gutter were installed, the apron has served no special utility to any of the appellants or their customers or suppliers. The photographic evidence makes that absolutely clear, and there is nothing in the record to contradict it.

It is apparent, therefore, that at the time of the accident and for many years before, the apron was not at all similar to the types of driveways found by other courts to constitute special uses, and did not, in fact, constitute such a special use of the sidewalk that was inconsistent with the general public use. This apron was part of the public walkway, and the duty to maintain it was committed solely to the county. It was knowingly accepted by the county with its curbs and its slope, and upon that acceptance, any duty on the part of appellants to provide routine maintenance terminated.[6]

---

5. *Compare Repinski v. Jubilee Oil Co.,* 405 N.E.2d 1383 (Ill. App. 1980); *Simmons v. Lake Charles,* 368 So. 2d 1167 (La. App. 1979); *Votsis v. Ward's Coffee Shop, Inc.,* 231 S.E.2d 236 (Va. 1977); *Levine v. Jale Corp.,* 413 S.W.2d 564 (Mo. App. 1967), and *Winston v. Hansell,* 325 P.2d 569 (Cal. App. 1958), with *Davis v. Pecorino,* 350 A.2d 51 (N.J. 1975), *District of Columbia v. Texaco, Inc.,* 324 A.2d 690 (D.C. 1974); *Herndon v. Arco Petroleum Co.,* 536 P.2d 1023 (Nev. 1975); *O'Connell v. Roper Electric Co., Inc.,* 498 S.W.2d 847 (Mo. App. 1973); *DeWitt v. Schuhbauer,* 177 N.W.2d 790 (Minn. 1970), and *Joel v. Electrical Research Products, Inc.,* 94 F.2d 588 (2d Cir. 1938). *Cf. Kernor v. New Jersey Bell Telephone Co.,* 295 A.2d 356 (N.J. 1972).

6. Appellee notes the testimony of Bethesda's owner, Mr. Edmonds, that in 1972 or 1973, observing the deteriorating condition of the apron, he

At oral argument, appellee offered a new theory to sustain appellants' liability. She contended that, although the county accepted the entire 50-foot right-of-way as a public thoroughfare, it somehow did not accept the responsibility for maintaining anything beyond the street itself. We can find no basis either in the record or in the law to support such a claim. The only evidence in this regard came from the county road maintenance engineer, who acknowledged county responsibility for the abutting sidewalks and attempted to exclude only driveways and aprons. He lent no support whatever to the assertion that the county's obligation for maintenance stopped at the curb line. Nor do we read the applicable provisions of the County Code as authorizing such a radical departure from the established common law public obligation. Section 24-21 (1965 Code), governing acceptance and maintenance of roads, speaks not only of a "street," a defined term (§ 1-3), but of a "street, alley, road or thoroughfare"; and the word "thoroughfare" has traditionally included walkways and footpaths. *See Mullen v. Fayette,* 85 N.Y.S.2d 64 (App. Div. 1948), *aff'd* 300 N.Y. 501, drawing from 3 Kent's Commentaries 432 (14th ed. 1896); *Watts v. Colonial Sand and Stone, Inc.,* 316 N.Y.S.2d 482 (Sup. Ct. 1970); *aff'd* 329 N.Y.S.2d 1004 (App. Div. 1972), *aff'd* 337 N.Y.S.2d 260; *and cf. Mead v. Coffeyville,* 107 P.2d 711 (Kan. 1940).

For these reasons, we believe that the court erred in denying appellants' motion for directed verdict. The evidence, viewed most favorably to appellee, failed to show any liability on appellants' part.

Our conclusions reached with respect to the main appeal make the cross-appeal moot, and we therefore need not address the issues raised by it.

> *Judgment reversed; appellees to pay the costs.*

---

mixed up some "Sakrete" and spread it around the apron. There was no evidence, however, that this somewhat informal attempt at improvement was done negligently or created any additional hazard or contributed in any way to the accident. In the absence of such evidence, it would not suffice to reimpose liability on appellants. *See Roark v. Hunting,* 248 N.E.2d 896 (N.Y. 1969).