## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 10 2020, 10:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brandon Hall
Greene & Schultz
Bloomington, Indiana

ATTORNEYS FOR APPELLEES

Rick D. Meils
Neil A. Davis
John W. Mervilde
Meils Thompson Dietz & Berish
Indianapolis, Indiana
Attorneys for Wabash Valley
Asphalt Co., LLC

Kevin C. Schiferl
Justin M. Wiser
Maggie L. Smith
Frost Brown Todd LLC
Indianapolis, Indiana
Attorneys for River Town
Construction, LLC

Brett T. Clayton
Reminger Co., L.P.A.
Indianapolis, Indiana
Attorney for Riddell National
Bank

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Curtis Elliott, *Appellant-Plaintiff,* <br><br> v. <br><br> Gradex, Inc., Wabash Valley Asphalt Co. LLC, River Town Construction LLC, Riddell National Bank, DLZ Corporation, Indiana Department of Transportation, and City of Brazil, Indiana, <br><br> *Appellees-Defendants.*[1] | August 10, 2020 <br><br> Court of Appeals Case No. 19A-CT-2863 <br><br> Appeal from the Clay Circuit Court <br><br> The Honorable Joseph D. Trout, Judge <br><br> Trial Court Cause No. 11C01-1905-CT-348 |

**Friedlander, Senior Judge.**

Curtis Elliott appeals the trial court's denial of his motion to correct error regarding the trial court's grant of Riddell National Bank's motion for judgment on the pleadings and Elliott's request for leave to file a third amended complaint. This matter stems from a bicycling accident that resulted in Elliott filing a complaint against Gradex, Inc., Wabash Valley Asphalt Co., LLC, River Town Construction, LLC, Riddell National Bank, DLZ Corporation, the Indiana Department of Transportation, and the city of Brazil, Indiana, to recover damages for injuries he sustained from the accident.

---

[1] Although, under Indiana Appellate Rule 17, "[a] party of record in the trial court . . . shall be a party on appeal[,]" Riddell National Bank is the sole appellee participating in this appeal. *See* Ind. Appellate Rule 17(A).

Elliott presents three issues for review, which we consolidate and restate as:

> 1. Did the trial court err by granting Riddell National Bank's motion for judgment on the pleadings and, subsequently, denying Elliott's motion to correct error?

> 2. Did the trial court err by denying Elliott's request to file a third amended complaint?

We affirm.

In addressing this appeal, we will take as true the facts alleged in Elliott's Second Amended Complaint.[2] So viewed, the facts of this case are as follows. The Indiana Department of Transportation ("INDOT") contracted with Gradex, Wabash Valley Asphalt, River Town Construction, and DLZ Corporation (referred to collectively as "the Construction Defendants") to pave U.S. Highway 40 in Brazil, Indiana. The work was completed prior to June 25, 2017.

The driveway that served as the entrance to Riddell National Bank's ("Riddell") parking lot was adjacent to the highway. Following the completion of the work, there existed an uneven surface between the newly installed pavement on the highway and the entrance of Riddell's driveway.

---

[2] "In accordance with our standard of review for judgments on the pleadings, our review is confined to the pleadings, accepting well-pled material facts in the complaint as true." *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 485 (Ind. Ct. App. 2017).

On June 25, 2017, Elliott was riding his bicycle on U.S. Highway 40. As he began to turn into Riddell's driveway, he noticed that the concrete surface of the driveway had a "lip that jutted out much higher than the asphalt road abutting it." Appellant's App. Vol. II, p. 15 (Second Amended Complaint for Damages). Unable to alter his course, Elliott "made contact with the concrete approach, which caused his bicycle to go into an uncontrolled skid." *Id.* He flipped over his bicycle and landed on the concrete, sustaining "serious and permanent injuries." *Id.* at 22.

On May 7, 2019, Elliott filed a complaint against Riddell and three of the Construction Defendants (Gradex, Wabash Valley Asphalt, and River Town Construction). On June 14, Elliott filed his First Amended Complaint to add DLZ Corporation as a defendant. On June 24, Elliott filed his Second Amended Complaint, adding INDOT and the city of Brazil as defendants. In his Second Amended Complaint, he alleged, in relevant part, that Riddell "knew, or should have known, of the uneven surface of the roadway at the entrance to its parking lot, but failed to correct or report said deficiency" and that the bank "was negligent in failing to warn the public of the uneven surface at the entrance to the parking lot." *Id.*

On July 10, Riddell filed its answer to Elliott's Second Amended Complaint and, that same day, filed a motion for judgment on the pleadings, under Indiana Trial Rule 12(C), alleging that Riddell "owed no duty to [Elliott] regarding the allegedly dangerous condition existing outside of its premises on the abutting roadway, which it did not create." *Id.* at 71 (Riddell's

Memorandum in Support of Motion for Judgment on the Pleadings).[3]  Elliott filed his response to Riddell's motion on July 29, and a hearing was held on the motion on September 27.[4]  On October 10, the trial court granted the motion, concluding as follows:

> Here, [Elliott] does not allege any affirmative act of Riddell caused the condition of the roadway at its intersection with Riddell's driveway.  [Elliott] therefore cannot succeed on his complaint against Riddell under the facts he has alleged, even if all of them were proven true.  Riddell was under no common law duty with respect to the condition of the road, and there are no alleged facts in the complaint that could show an assumption of that duty.

*Id.* at 11 (Order).  The order was entered as a final, appealable order.

[9]  On November 5, Elliott filed a Motion to Correct Error, or in the Alternative, a Motion for Leave to File a Third Amended Complaint.  Elliott requested that

> the Court reverse its October 10, 2019, Order granting Riddell Bank's Motion on the Pleadings, and issue an Order denying Riddell Bank's Motion . . . .  In the alternative, [Elliott] requests that the Court treat its Order as an Order granting dismissal pursuant to [Indiana Trial Rule] 12(B)(6) for failure to state a claim for which relief may be granted.  Such an Order grants

---

[3] On July 12, 2019, River Town Construction filed its answer to Elliott's Second Amended Complaint. INDOT filed its answer on August 14, and the city of Brazil filed its answer on August 19.

[4] At the hearing on Riddell's motion for judgment on the pleadings, INDOT "join[ed] in the opposition along with [Elliott] to the motion for judgment on the pleadings[.]"  Tr. Vol. II, p. 21.

[Elliott] the ability to file an Amended Complaint as a matter of right.

*Id.* at 122 (Motion to Correct Error, or in the Alternative, a Motion for Leave to File a Third Amended Complaint). The trial court denied the motion on November 18.[5] This appeal followed.

## 1.

Elliott argues that the trial court erred in granting Riddell's motion for judgment on the pleadings. Indiana Trial Rule 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings pursuant to T.R. 12(C) attacks the legal sufficiency of the pleadings. *Davis ex rel. Davis v. Ford Motor Co.*, 747 N.E.2d 1146 (Ind. Ct. App. 2001), *trans. denied*. The test to be applied when ruling on a T.R. 12(C) motion is whether, in the light most favorable to the non-moving party and with every intendment regarded in his favor, the complaint is sufficient to constitute any valid claim. *Id.* In applying this test, we may look only at the pleadings, with all well-pleaded material facts alleged in the complaint taken as admitted, supplemented by any facts of which the court will take judicial notice.[6] *Id.* The

---

[5] Riddell filed a motion in opposition to Elliott's motion to correct error on November 19, 2019.

[6] "The 'pleadings' consist of a complaint and an answer, a reply to any counterclaim, an answer to a cross-claim, a third-party complaint, and an answer to a third-party complaint." *Consol. Ins. Co. v. Nat'l Water Servs. LLC*, 994 N.E.2d 1192, 1196 (Ind. Ct. App. 2013) (quoting *Waldrip v. Waldrip*, 976 N.E.2d 102, 110 (Ind. Ct. App. 2012)), *trans. denied*. "Pleadings" also consist of any written instruments attached to a pleading. *See*

standard of review is de novo, and we will affirm the trial court's grant of a T.R. 12(C) motion for judgment on the pleadings when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. *Davis*, 747 N.E.2d 1146.

[11] According to Elliott, the trial court's order granting Riddell's motion for judgment on the pleadings "should not stand because the finder of fact improperly rejected the pleadings made by [Elliott] in his [c]omplaint as untrue." Appellant's Br. p. 12. Elliott maintains that the "plain statements" in his Second Amended Complaint that alleged

> [Riddell] owned, controlled, maintained, and failed to warn the public about the hazardous defect on its property, and that that defect caused [his] damages, are plain statements that properly allege circumstances whereby [Riddell] could be held liable for [Elliott's] damages. The Trial Court's determination that the facts pled were deficient in alleging specific conduct on the part of [Riddell] in creating a hazard asks too much of a [c]omplaint filed prior to discovery and the acquisition of evidence.

*Id.* at 13-14. Therefore, Elliott argues, "[t]he Trial Court's [o]rder granting the motion for dismissal based only on the pleadings should be reversed and [Elliott's] Motion to Correct Error should have been granted." *Id.* at 14.

---

Ind. Trial Rule 10(C) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

[12] Riddell contends that the trial court properly granted its motion for judgment on the pleadings. According to Riddell, Elliott's complaint fails because Riddell owed no duty to Elliott regarding the condition of the approach to its driveway. Riddell maintains that it "had no control over the highway-driveway approach, and it did not create the alleged injury-producing condition." Appellee's Br. p. 13.

[13] Elliott's Second Amended Complaint alleges that the Construction Defendants were contracted to pave U.S. Highway 40; Riddell possessed and controlled the driveway that abutted the highway; and, after the paving was completed, there was an uneven surface between the newly-installed pavement and the driveway entrance to Riddell's parking lot. The complaint also alleges that Elliott was riding along the highway; he was injured when he turned his bicycle into Riddell's driveway and made contact with the uneven approach; and Riddell was negligent for failing to warn the public of the uneven approach.

[14] Elliott correctly asserts that landowners owe a legal duty to entrants onto their property in varying degrees based upon the entrant's status on the property as an invitee, a licensee, or a trespasser. *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991). For example, a landowner owes a trespasser the duty to refrain from willfully or wantonly (intentionally) injuring him after discovering his presence. *Id.* An Indiana landowner owes a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril. *Id.* The landowner also has a duty to warn a licensee of any latent danger on the premises of which the landowner has knowledge. *Id.* A landowner owes

the highest duty to an invitee, that is, a duty to exercise reasonable care for his protection while he is on the landowner's premises. *Id.* This duty to an invitee is defined in the Restatement (Second) of Torts § 343 (1965) as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

[15] In the case before us, the pleadings do not reveal Elliott's status on Riddell's property. If we assume, however, that Elliott was a public invitee onto the property,[7] even though his accident occurred as he turned into Riddell's driveway, our review of Indiana cases reveals none that support Elliott's

---

[7] Restatement (Second) of Torts § 332 (1965) provides that the following persons qualify as invitees and defines the terms "public invitee" and "business visitor" as follows:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

contention—that is, that Riddell's duty to him as an invitee extends to a duty regarding a condition that was created by work performed on an adjacent highway by entities contracted by INDOT. To the contrary, Indiana law—and law from other jurisdictions that we find instructional—indicate the opposite result.

[16] In *Jump v. Bank of Versailles*, 586 N.E.2d 873 (Ind. Ct. App. 1992), the plaintiff was injured when she fell down an icy stairwell that was located between a bank and the office building in which she worked. Although the stairwell was located entirely on the bank's property, it was often used by the public to gain access to the adjacent office building. Jump sued the owner of the office building, arguing that the owner had a duty to keep the bank's steps reasonably safe for persons using the steps to gain access to the office building. A panel of this Court ultimately concluded that the owner of the office building had no duty to Jump with regard to the bank's icy steps. *Id.* at 882. Specifically, we stated, "we will not aid even innocent plaintiffs by imposing a duty on adjacent landowners who have not created a dangerous condition affecting the adjoining property and invited their invitees to use such property." *Id.*

[17] In *Sizemore v. Templeton Oil Co.*, 724 N.E.2d 647 (Ind. Ct. App. 2000), this Court considered a fall by the plaintiff into a large pothole. The plaintiff was walking in the right-of-way of a state road, intending to enter a gas station owned by Templeton. The plaintiff injured his ankle when the edge of the pothole located in the right-of-way gave way underneath him. The pothole was located adjacent to the entrance to Templeton's gas station, and the entrance to the gas

station was adjacent to and extended from the highway right-of-way in which the pothole was located. Templeton was aware of the pothole. For purposes of argument, we assumed the plaintiff was a business invitee of the gas station owner. *Id.* at 653, n.2.

[18] The plaintiff sued Templeton, arguing that Templeton owed the plaintiff a duty of care with respect to the pothole due to Templeton's control over the area where the pothole was located and because it had a policy of inspecting its parking lot for problems. Templeton moved for summary judgment, which the trial court granted in its favor. On appeal, we affirmed the trial court's grant of summary judgment to Templeton, finding that "[e]ven assuming that Templeton's sweeping and plowing activities included the area where the pothole was located, those activities do not demonstrate control over the condition and repair of the pavement itself." *Id.* at 652. We further found:

> This evidence[, that Templeton knew about the pothole and the allegation that the plaintiff relied on Templeton's policy of inspection,] does not demonstrate any genuine issue of fact with respect to whether Templeton assumed a duty toward the [plaintiff] with respect to the pothole. Assumption of a duty requires affirmative conduct or agreement to undertake some action on the part of the defendant. [*Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 769 (Ind. Ct. App. 1986)]. There is no evidence of affirmative conduct or agreement on Templeton's part that supports the [plaintiff's] argument that Templeton assumed a duty with respect to the pothole. Templeton's policy of inspecting its own premises does not give rise to an inference that it assumed a duty to inspect, repair, report or act in any way with regard to the state highway right-of-way in which the pothole was located.

*Id.* We noted:

> Our holding today, and our earlier holding in *Jump*, is consistent with our conservative approach in other factual circumstances, wherein we have held that *a landowner's only duty to persons traveling on an adjacent highway is to refrain from creating or maintaining a hazardous condition*. Moreover, public policy considerations weigh against the extension of the duty to provide safe ingress and egress outside of the business owner's premises. It is unclear how a business owner would discharge such a duty. Surely they would not be required to repair conditions such as potholes, particularly on state roads.

*Id.* at 654-55 (internal citations omitted) (emphasis added).

[19]   In resolving the matter before us, we find helpful the analysis provided in a case decided by the Missouri Court of Appeals, *Levine v. Jale Corporation*, 413 S.W.2d 564 (Mo. App. 1967), *trans. denied*. In *Levine*, the court determined that the owner of an apartment building was not liable for injuries sustained by a pedestrian due to a defect in a curb that was located between the sidewalk in front of the apartment building and a driveway. The driveway interrupted the sidewalk and extended to the rear of the building. Individuals having business at the apartment building used the driveway for their trucks and other vehicles. Because of the narrowness of the driveway, trucks often drove their wheels over the curb and the sidewalk. There was no sidewalk across the driveway. The sidewalk and curb came up to the drive, and the curbing curved around the end of the sidewalk. The driveway was at street level, and, thus, was lower than the level of the sidewalk by the height of the curbing. In walking along the

sidewalk, a pedestrian had to step down from the sidewalk and curbing on one side, walk across the driveway, and then step up onto the curb and sidewalk on the other side of the driveway. Levine was injured when he walked, at night, from his apartment house, along the sidewalk; stepped down to the level of the driveway; walked across the driveway, and in stepping up onto the curb on the other side of the driveway, stepped into an indentation, or hole, or a worn place in the curbing or sidewalk, and turned his ankle and foot.

[20] In reaching its determination that the owner of the apartment building was not liable, the court noted that Levine

> *does not contend that defendant's liability results from any affirmative act committed by defendant*; rather he asserts that the use of the driveway by the various trucks and other vehicles . . . constituted a special use of the sidewalk by and for the benefit of defendant and that such special use caused the defects in the sidewalk and that the defendant negligently failed to repair such defects and that such negligence caused plaintiff's injury.

*Id.* at 566 (emphasis added). The court found that "it is abundantly clear that the abutting landowner has a duty to refrain from any affirmative action causing a dangerously defective condition in the sidewalk." *Id.* at 567. However, the court ultimately concluded that the trial court properly entered judgment in favor of the defendant because there was no evidence of any affirmative act on the part of the defendant that caused the defects that resulted in Levine's injury. *Id.* at 570.

[21]    In *Heaney v. Colonial Filling Stations*, 262 Mass. 338, 159 N.E. 916 (1928), the defendant, Colonial Filling Stations, built a gas station pursuant to an approved plan that was on file with the city board of public service. In the process, it dug up a sidewalk and put in a cement driveway. The former grade of the sidewalk was lowered such that there was a perpendicular drop of 5½ inches in the grade between the driveway and the adjoining sidewalk. The plaintiff, Heaney, was walking along the sidewalk when she fell into the driveway because of the lowering of the sidewalk to the level of the driveway. Heaney sued the gas station and the city of Lowell, Massachusetts, alleging in relevant part that the gas station was negligent in making the changes that caused her injuries. The court determined, however, that the 5½ inches drop in the grade of the driveway with the adjoining sidewalk did not render the abutting owner, the gas station, liable—specifically:

> The defendant . . . was not acting unlawfully when pursuant to the permit it made the necessary excavation, and built the driveway. It is not contended that the plaintiff was injured by any negligence of the defendant while the driveway was being built, nor was there evidence that the defendant departed from the specifications and plan of the permit[.]

*Id.* at 342, 159 N.E. at 917 (internal citations omitted).

[22]    Likewise, here, Elliott does not allege in his Second Amended Complaint that Riddell created the uneven surface at the approach to its driveway or that the driveway was out of repair or improperly constructed. Instead, he alleges that after the Construction Defendants completed the work on U.S. Highway 40,

"*there existed* an uneven surface between the newly installed pavement on [the highway] and the entrance to [the] parking lot[;]" Riddell "took possession of and exhibited control over the entrance to the parking lot thereafter[;]" and Riddell was aware, or should have known, of the uneven surface and was negligent in failing to warn the public of the uneven surface. Appellant's App. Vol. II, p. 15 (emphasis added). However, because Riddell, the abutting owner, did not create the allegedly hazardous condition at the approach to its driveway, Riddell did not owe a duty to Elliott with respect to the condition. Thus, Riddell was not negligent as a matter of law. *See, e.g.*, *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004) ("Absent a duty, there can be no breach of duty and thus no negligence or liability based upon the breach.")

[23] Regarding Elliott's allegation that Riddell controlled the uneven surface at the approach to its driveway, we note that the law is well-settled that a governmental entity has a common law duty to exercise reasonable care and diligence to keep its streets and sidewalks in a reasonably safe condition for travel. *Catt v. Bd. of Comm'rs of Knox Cty.*, 779 N.E.2d 1 (Ind. 2002); *see also* Ind. Code § 34-13-3-3(18) (declaring "[T]his subdivision [governing immunity for governmental entities and employees] shall not be construed to relieve a responsible governmental entity from the continuing duty to provide and maintain public highways in a reasonably safe condition."). As our Supreme Court explained in *Putnam County Sheriff v. Price*, 954 N.E.2d 451, 455 (Ind. 2011): "[T]his proposition is grounded in the concept of premises liability and presupposes ownership, maintenance, or control of the roadway." Although

Elliott alleges that Riddell took possession of and exhibited control over the entrance to the parking lot and, therefore, the allegedly hazardous condition, our review of the sections of the Indiana Administrative Code that govern transitions between highways and driveways leads us to reject Elliott's allegations. Under 105 Ind. Admin. Code 7-1-2 (1989), the transition between a highway and a driveway is classified as an "'Approach' [and is defined as] a way or place improved for vehicular or pedestrian traffic on the highway right-of-way that joins the pavement edge of the highway with a driveway or pedestrian walkway." Importantly, the control of approaches to driveways from highways rests with the Indiana department of highways. *See* 105 Ind. Admin. Code 7-2-1 (1989) ("The Indiana department of highways shall control access and regulate work performed on approaches to driveways on highway right-of-way."); *see also* Ind. Code § 8-23-2-9 (2009) ("After June 30, 1989, any reference to: . . . (3) the department of highways (IC 8-9.5-4-2, repealed); . . . in any statute or rule shall be treated as a reference to the Indiana department of transportation, as established by this article.").

[24] Based upon the foregoing, we find that there are no facts alleged by Elliott's Second Amended Complaint under which Elliott would be entitled to relief as against Riddell. Thus, the trial court properly granted Riddell's motion for judgment on the pleadings and properly denied Elliott's motion to correct error with respect to the granting of Riddell's motion.

## 2.

Next, Elliott maintains that the trial court erred in denying his request to file a third amended complaint. His argument, essentially, is that Riddell's motion for judgment on the pleadings under T.R. 12(C) should have been treated as a motion to dismiss pursuant to T.R. 12(B)(6) and that the trial court's "dismissal should therefore have been treated as a failure to state a claim upon which relief may be granted[,]" which would "giv[e] rise to the automatic right of [Elliott]" to amend his complaint. Appellant's Br. p. 15. We disagree.

Indiana Trial Rule 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The sufficiency of the pleadings' claims and defenses is tested by a motion for judgment on the pleadings under T.R. 12(C). *KS & E Sports v. Runnels*, 72 N.E.3d 892 (Ind. 2017). In reviewing a motion under 12(C), a court must "base [its] ruling solely on the pleadings" and "accept as true the material facts alleged in the complaint." *Id.* at 898 (*quoting Veolia Water Indianapolis, LLC v. Nat'l Tr. Ins. Co.*, 3 N.E.3d 1, 5 (Ind. 2014)). A motion for judgment on the pleadings is typically directed toward a determination of the substantive merits of the controversy. *Davis*, 747 N.E.2d 1146 (Ind. Ct. App. 2001) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1369 (3d ed. 2004)). A court should grant the motion "only when it is clear from the face of the pleadings that the plaintiff cannot in any way succeed under the operative facts and allegations made therein." *Noblesville Redevelopment Comm'n*, 674 N.E.2d 558, 562 (Ind. 1996). When a pleaded claim provides no circumstances

in which relief can be granted, there is no need to put either the parties or the court through costly and time-consuming litigation. *Bayer Corp. v. Leach*, 147 N.E.3d 313 (Ind. 2020).

[27] By contrast, T.R. 12(B) provides for certain defenses to be raised by motion, including "[f]ailure to state a claim upon which relief can be granted." T.R. 12(B)(6). "[A] Trial Rule 12(B) motion is directed solely toward procedural defects or the statement of the plaintiff's claim for relief and does not seek to determine the substantive merits of the controversy." *Davis*, 747 N.E.2d at 1149; 5C Wright & Miller, § 1369. "The basic purpose of a T.R. 12(B)(6) motion to dismiss is to test the legal sufficiency of the complaint to state a redressable claim. Thus, the motion is properly utilized to test the legal sufficiency of the complaint; or, stated differently, to test the law of the claim, not the facts that support it." *Anderson v. Anderson,* 399 N.E.2d 391, 405 (Ind. Ct. App. 1979) (citations omitted). Importantly, under T.R. 12(B)(6), if the movant is successful, the non-movant may amend its pleading once as of right within ten days after service of notice of the court's order. By contrast, T.R. 12(C) contains no provision allowing amendment.

[28] In *Gregory & Appel, Inc. v. Duck*, 459 N.E.2d 46, 49 (Ind. Ct. App. 1984), we held that, when a 12(B)(6) defense (such as failure to state a claim upon which relief may be granted) is raised by a 12(C) motion for judgment on the pleadings, the trial court *must* treat the motion as a 12(B)(6) motion for failure to state a claim upon which relief may be granted and allow the non-moving party ten days to amend their complaint as a matter of right. However, we rejected the claim

that a T.R. 12(C) motion must necessarily be treated as a 12(B)(6) motion where the responsive pleading *did not* raise failure to state a claim upon which relief may be granted as a defense. *Id.* at 49. We did not agree that "a 12(C) motion which does not address the sufficiency of the complaint must, nonetheless, be treated as a 12(B)(6) motion." *Id.*

[29] Here, Riddell, in its motion for judgment on the pleadings, did not challenge the sufficiency of Elliott's complaint to state a claim upon which relief may be granted. Thus, the trial court properly treated Riddell's motion as a T.R. 12(C) motion and did not err in denying Elliott's motion to correct error in which he requested leave to file a third amended complaint.

[30] We find the trial court did not err when it granted Riddell's motion for judgment on the pleadings and denied Elliott's motion to correct error. The judgment of the trial court is affirmed.

Bailey, J., and Pyle, J., concur.